In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2480

NATHANIEL BROWN,

*Plaintiff-Appellant,*

*v.*

MICHAEL RANDLE, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 11 C 50193 — **Frederick J. Kapala**, *Judge.*

ARGUED OCTOBER 26, 2016 — DECIDED FEBRUARY 7, 2017

Before FLAUM, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In 1994 Nathaniel Brown was convicted of four sex offenses and sentenced to prison in Illinois. His projected release date was July 10, 2009, after which his sentence required him to serve three years of "mandatory supervised release," a status that officials in Illinois often call parole.

When July 10 arrived, however, the Illinois Department of Corrections did not release Brown. Instead it issued a "Parole Violation Report" reciting that Brown had committed two anticipatory violations of the terms of supervised release. First, he had refused to accept electronic monitoring that is required of sex offenders; second, he lacked a place where he could lawfully reside outside the prison's walls. (Like many other states, Illinois limits the locations where sex offenders can make their homes.) The problems are related. Illinois tries to find lawful accommodations for sex offenders who promise to wear electronic monitoring devices, but because Brown rejected the device the prison system did not try to help him find a place to live.

Brown seeks damages for the delay in releasing him, yet he does not contend that either the electronic-monitoring or the residential-location condition of release is invalid. We have held that one is proper, and the Eighth Circuit has sustained the other. See *Belleau v. Wall*, 811 F.3d 929 (7th Cir. 2016) (state may require a sex offender to wear a GPS ankle bracelet as a condition of release); *Weems v. Little Rock Police Department*, 453 F.3d 1010 (8th Cir. 2006) (residential-location limits for sex offenders are valid); *Doe v. Miller*, 405 F.3d 700 (8th Cir. 2005) (same). Cf. *Doe v. Lafayette*, 377 F.3d 757 (7th Cir. 2004) (en banc) (states may prevent sex offenders from visiting places where children congregate). Nonetheless Brown contends that he was entitled to immediate release without regard to those conditions. Perhaps the state could have picked him up later and revoked his release, he allows, but first it had to discharge him. He contends that his confinement violated both the Fourth Amendment, applied to the states through the Fourteenth Amendment, and the Due Process Clause of that amendment.

One part of Illinois' government thinks that he should have been let out in July 2009. The Prisoner Review Board held a hearing in October 2009 and determined that Brown had not violated the conditions of his release. Apparently it believes that an anticipatory violation should be distinguished from a completed violation, though it did not explain its reasoning. On the same day the Board made this decision, an employee of the Department of Corrections issued a second Parole Violation Report, giving the same two reasons as before. That step was authorized by 20 Ill. Admin. Code §1610.110(a), which says that even a formal order for release on parole "shall not be effective" until the prisoner has an approved residence. The Board then washed its hands of the matter, having earlier told the Department that it would not re-review situations in which the Department disagreed with its decisions. Brown remained in prison until January 11, 2011, when he was released unconditionally. (Illinois gives day-for-day good-time credit, so 18 months in prison was deemed to discharge a sentence of three years' supervised release.)

One of Brown's themes is that Illinois did not offer him a hearing before it issued either the first or the second violation report. No one doubts that, if he had been released, the Constitution would have required notice and an opportunity for a hearing before he could be returned to prison. See *Morrissey v. Brewer*, 408 U.S. 471 (1972). But the Supreme Court has limited *Morrissey* by holding that a state may rescind parole, without a hearing, if it acts before a person reaches the outside of the prison. See *Jago v. Van Curen*, 454 U.S. 14 (1981). That's what happened to Brown.

No matter how the Due Process calculus may come out, Brown insists, he had a right under the Fourth Amendment to release as soon as his prison sentence ended. Yet as of 2009, when he was kept in prison, no court had held that the Fourth Amendment entitles a sex offender to release even though it appears likely that, as soon as he steps outside the prison's front door, he will be in violation of the terms of release. Indeed, no federal court has so held to this day. Under the circumstances, therefore, the defendants are entitled to qualified immunity from damages. And so we concluded with respect to Wisconsin's system of keeping sex offenders in prison until they have a lawful post-prison residence. See *Werner v. Wall*, 836 F.3d 751 (7th Cir. 2016).

In a supplemental brief filed after argument, Brown asks us to put *Werner* to one side because Illinois and Wisconsin do not use identical systems, and he emphasized the Fourth Amendment while Werner relied principally on the Eighth Amendment. These distinctions are true but beside the point. The core conclusion of *Werner* is that the federal judiciary has not clearly established that sex offenders who lack a lawful place to live must nonetheless be released from prison. That conclusion does not depend on the particulars of the state systems or the constitutional provision a given plaintiff emphasizes.

Brown does not identify any decision of a federal court establishing that sex offenders without approved living arrangements must be released. Instead he states the constitutional rule at a high level of generality (the Fourth Amendment forbids unreasonable seizures) and contends that this suffices. No, it doesn't. As the Justices reiterated earlier this month:

> "clearly established law" should not be defined "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity … into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.*, at 639.

*White v. Pauly*, No. 16–67 (U.S. Jan. 9, 2017), slip op. 7. Federal courts have not particularized the sort of right Brown asserts, so the defendants are entitled to immunity from liability in damages.

But wait!, Brown cries. Even if it is not clearly established that the Constitution requires immediate release of sex offenders who lack lawful living plans, it must be clearly established that inmates who *have* such plans are entitled to their freedom. Perhaps so, but Brown has not shown either that he had lawful living plans or that he had consented to electronic monitoring. His complaint does not contain such an allegation; he did not proffer an affidavit to that effect; his brief does not ask for an opportunity to prove it. Instead of contending that he had consented to monitoring and had a lawful place to live, Brown insists that the Prison Review Board must have found those matters in his favor.

There are two problems. First, the Board did not say any such thing. All it said is that Brown had not violated the conditions of his release. We take this as restating the Board's oft-expressed view that the Department of Corrections should follow a release-and-revoke model, rather than retaining custody of prisoners during their supervised-release periods. If the Board meant something different (or something extra) in Brown's case, it did not say so.

Second, no rule of federal law requires every state official to accept, without question, any determination made by some other state official. Whether the Board's decision binds the Department of Corrections is a matter of state rather than federal law. Cf. *Castle Rock v. Gonzales*, 545 U.S. 748 (2005). Perhaps 20 Ill. Admin. Code §1610.110(a) is invalid as a matter of Illinois law. Brown could have pursued such a theory in state court. But 42 U.S.C. §1983 does not authorize federal courts to order state officials to pay damages for violations of state law; remedies in §1983 suits are for violations of federal law only.

Brown has a further claim for relief that is unrelated to his status as a sex offender. He contends that state employees violated the Eighth Amendment by withholding care for a serious medical condition. See generally *Petties v. Carter*, 836 F.3d 722 (7th Cir. 2016) (en banc) (standards for medical-care claims under the Eighth Amendment). There's no doubt that he has grave coronary problems; there is also no doubt that he has received intensive care for them. He had a heart attack in March 2007 and was sent to a hospital. A recurrence in April led to another trip to the hospital, followed by a transfer to a university health center for triple bypass surgery. Another heart attack in April 2008 led to his return to the university's health center for placement of a stent, and he had received a second stent in May 2010 to relieve a coronary blockage. Since his release from prison in January 2011, he has had two additional stents inserted to deal with blocked arteries.

In this court, Brown contests two aspects of his medical care: a delay between July 2009 and May 2010 in returning him to the university center for diagnosis and treatment, and

a six-week period in May and June 2010 that he spent in the prison's general population rather than its health-care unit. He wants to recover damages from Nedra Chandler, who was the Warden of Dixon Correctional Center in 2009 and 2010. He does not seek damages from anyone else, such as the prison physician who determined that Brown did not need hospital care between July 2009 and May 2010.

Brown does not contend that Chandler had anything to do with the timing of his visits to the university health center, so she cannot be liable. Public officials are accountable for their own conduct, but they are not vicariously liable for the acts of their subordinates. See, e.g., *Iqbal v. Ashcroft*, 556 U.S. 662, 677 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203–05 (7th Cir. 2012) (en banc). Brown alleges that in March 2007 Chandler called him a faker and that this supports an inference that she was responsible for keeping him away from the hospital between July 2009 and May 2010. That's a non-sequitur. The comment that Brown attributed to Chandler occurred before his repeated hospitalizations for heart problems. By the middle of 2009, after Brown had triple-bypass surgery and yet another heart attack following that surgery, no one could have doubted that his condition was real. No reasonable trier of fact could conclude that something Chandler may have said in March 2007 controlled medical decisions that the prison's physicians made in 2009 or 2010.

Brown maintains that Chandler personally made the decision to house him in the general population during May and June 2010, so she could be liable under the standards of *Petties*. This aspect of Brown's claim fails because he has not shown harm. Indeed, he has not even alleged harm. He says that he would have been more comfortable in the health-care

unit and could have received faster treatment if he had an-other heart attack, but he does not allege that heart problems *did* recur during those six weeks. The Eighth Amendment prevents prison personnel from being deliberately indiffer-ent to serious medical needs, see *Farmer v. Brennan*, 511 U.S. 825 (1994), but it does not oblige those officials to maximize the comfort of inmates who have medical challenges such as heart disease.

AFFIRMED