N.R. SMITH, Circuit Judge,
dissenting in part:
In resolving a claim of qualified immunity, “summary judgment is improper if, resolving all disputes of fact and credibility in favor of the party asserting the injury, (1) the facts adduced show that the officer’s conduct violated a constitutional right, and (2) that right was “clearly established” at the time of the violation.” Kirkpatrick v. Cty. of Washoe, 843 F.3d 784, 788 (9th Cir. 2016) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Applying this precedent here, we must first resolve all factual conflicts in favor of Sharp III. We need not discuss the first prong because the Majority concedes (and I agree) that the deputies violated the Constitution (a) when the deputies seized Sharp III, (b) when the deputies used force against him, and (c) when the deputies searched his person. Thus, we need only discuss the second prong of the analysis.
A right is clearly established if a reasonable officer would know that the alleged conduct violated the Constitution. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). An officer has fair warning that conduct violates the Constitution if the conduct is an obvious violation of constitutional principles or if a factually analogous case prohibits the conduct. White v. Pauly, —U.S. —, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017). Because the Majority fails to view the facts in the light most favorable to Sharp III, they claim that the deputies’ unconstitutional actions were not sufficiently egregious for the deputies to have fair warning that they were violating the Constitution. Resolving all disputes of fact and credibility in favor of Sharp III, I must dissent. Let me explain.
I. Seizure of Sharp III
The parties and the Majority agree that the seizure of Sharp III must be analyzed in two parts: (1) the initial arrest of Sharp III, and (2) the continuation of the arrest in the patrol vehicle after the deputies learned that he was not the subject of the arrest warrant. I proceed accordingly.

A. The Initial Arrest of Sharp III was an Obvious Constitutional Violation

It is axiomatic that a warrantless arrest requires probable cause. E.g., Michigan v. Summers, 452 U.S. 692, 700, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), Indeed, our court’s precedent makes it apparent to law enforcement officers that a warrantless arrest can be made only if probable cause exists. United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (“Under the Fourth Amendment, a warrantless arrest requires probable cause.”); Duran v. City of Douglas, Ariz., 904 F.2d 1372, 1378 (9th Cir. 1990) (“If there is one irreducible minimum in our Fourth Amendment jurisprudence, it is that a-police officer may not detain an individual simply on the basis of suspicion in the air.”). Similarly, the Summers Court made it abundantly clear that there are virtually no exceptions to the probable cause requirement when it comes to arrests:
The central importance of the probable-cause requirement to the protection of a citizen’s privacy afforded by the Fourth Amendment’s guarantees cannot be compromised [by removing the probable cause requirement for arrests]. The requirement of probable cause has roots that are deep in our history. Hostility to seizures based on mere suspicion was a prime motivation for the adoption of the Fourth Amendment, and decisions immediately after its adoption affirmed that common rumor or report, suspicion, or even ‘strong reason to suspect’ was not adequate to support a warrant for arrest. The familiar threshold standard *923 of probable cause for Fourth Amendment seizures reflects the benefit of extensive experience accommodating the factors relevant to the ‘reasonableness’ requirement of the Fourth Amendment, and provides the relative simplicity and clarity necessary to the implementation of a workable rule.
Although we refused in Dunaway to find an exception that would swallow the general rule, our opinion recognized that some seizures significantly less intrusive than an arrest have withstood scrutiny under the reasonableness standard embodied in the Fourth Amendment. In these cases the intrusion on the citizen’s privacy was so much less severe than that involved in a traditional arrest that the opposing interests in crime prevention and detection and in the police officer’s safety could support the seizure as reasonable.
Summers, 452 U.S. at 697-98, 101 S.Ct. 2587. (emphasis added) (quotation marks and citations omitted). Following this reasoning, the Supreme Court concluded that exceptions are permissible only if they “are consistent with the general rule that every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause.” Id. at 701, 101 S.Ct. 2587. Thus, Michigan v. Summers makes it apparent to law enforcement officers that a warrantless arrest can be made only with probable cause.
Turning to the facts, the Majority "writes that “it is not clear that Deputies Anderson and Flores actually even formed a specific belief that Sharp III was the warrant subject.” I agree. In explaining the facts leading to Sharp Ill’s arrest, Deputy Flores stated that she “didn’t know who was coming out of the house, to be honest.... [I]t wasn’t secured, so we were trying to just detain everybody!)]” In addition, Sharp III did not match the description of the suspect. Sharp III was significantly older than the suspect, was wearing different clothing than the suspect, and displayed a demeanor inconsistent with a fleeing suspect. Thus, it is not surprising that Deputy Anderson also admitted that he “hadn’t identified who [Sharp III] was” and only believed that Sharp III “may be” the wanted person. These facts seem to make clear that the deputies did not actually mistake Sharp III for the fleeing suspect. Further, even if the facts are not clear, we must resolve any ambiguity in favor of Sharp III. E.g., Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004). These facts then require us to analyze this case based on the assumption that Deputies Anderson and Flores did not form a specific belief that Sharp III was the warrant subject, but arrested him simply because he was present at the scene. As a result, the deputies made a warrantless arrest.
Viewing the evidence in the light most favorable to Sharp III, it is obvious that the deputies arrested Sharp III without probable cause. The facts in this case do not come close to meeting the probable cause standard. In an effort to avoid that uncomfortable truth, the Majority ignores the statements made by Deputies Anderson and Flores and analyzes this case as one of mistaken-identity.[1] But that *924 theory crumbles when we view the facts in the light most favorable to Sharp III. Since the deputies had fair warning that their conduct violated Sharp Ill’s Fourth Amendment rights when they arrested him without probable cause, they are not entitled to qualified immunity. The District Court was right; this claim should go to trial.

B. The Continued Seizure of Sharp III was an Obvious Constitutional Violation

As noted, it is obvious that, “[u]nder the Fourth Amendment, a warrantless arrest requires probable cause.” United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007). In addition, seizing a citizen without probable cause for exercising their First Amendment rights is an obvious violation of the Fourth Amendment. Duran v. City of Douglas, Ariz., 904 F.2d 1372, 1377-78 (9th Cir. 1990). Viewing the evidence in the light most favorable to Sharp III, the deputies lacked probable cause to continue Sharp Ill’s arrest; the deputies continued the arrest only because Sharp III exercised his First Amendment rights. Since the deputies had fair warning that this conduct violated Sharp Ill’s Fourth Amendment rights, they are not entitled to qualified immunity. The District Court was right; this claim should go to trial. Again, let me explain.
1. Viewing the Evidence in the Light Most Favorable to Sharp III, the Deputies Continued Sharp Ill’s Arrest in Retaliation for Exercising His First Amendment Rights .
The Majority recites these facts related to Sharp Ill’s seizure after the deputies realized he was not the subject of the arrest warrant-.
At this time, the deputies did not release Sharp III. Instead, they kept him handcuffed and locked in the patrol car. Sharp III was furious and adamantly protested his detention, loudly swearing at the deputies and threatening to sue them. In response, Deputy Anderson told Sharp III: “If you weren’t being so argumentative, I’d probably just put you on the curb.”
Based on Deputy Anderson’s statement, the Majority concedes that the deputies failed to release Sharp III in retaliation for exercising his First Amendment rights. In contrast, when analyzing whether the continued detention violated Sharp Ill’s Fourth Amendment rights, the Majority inexplicably ignores Deputy Anderson’s statement. Instead, the Majority improperly concludes that the deputies may have reasonably but mistakenly believed that the exception in Summers applied to arrest warrants. However, the Majority’s conclusion is possible only if we view the evidence in the light most favorable to the deputies. Thus, viewing the facts in the light most favorable to Sharp III, the deputies continued Sharp Ill’s arrest because he exercised his First Amendment rights.
2. Continuing Sharp Ill’s Seizure for Exercising His First Amendment Rights was an Obvious Violation of Sharp Ill’s Fourth Amendment Rights
Holding a suspect in custody for exercising his First Amendment rights is an obvious violation of the Fourth Amendment. Indeed, case law in our circuit compels this conclusion. In Duran v. City of Douglas, Ariz., an officer detained the defendant for “making obscene gestures toward [the officer] and yelling profanities.” Duran v. City of Douglas, Ariz., 904 F.2d 1372, 1377 (9th Cir. 1990). The Duran court held that, *925 “while police, no less than anyone else, may resent having obscene words and gestures directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment.” Id. at 1378. Consequently, the court held that detaining an individual without probable cause for exercising First Amendment rights was an obvious violation of the Fourth Amendment. Id. The import of Duran is clear: the deputies committed a clearly established violation of the Fourth Amendment when they kept Sharp III in custody for exercising his First Amendment rights.[2] As a result, the second prong of the qualified immunity analysis does not provide immunity to the deputies.
3. The Deputies Committed an Obvious Violation of Sharp Ill’s Fourth Amendment Rights Even if Summers Applied to Arrest Warrants
' The deputies claim that they are entitled to qualified immunity, because it was not clearly established (at the time of Sharp Ill’s detention) that Summers did not apply to arrest warrants. The Majority agrees that this legal principle was not clearly established prior to this case. I disagree.[3] However, even if the deputies could have believed that the Summers exception applied to arrest warrants, Summers unequivocally proscribed the continuation of Sharp Ill’s arrest.
The court in Summers concluded that a valid search warrant “implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.” Summers, 452 U.S. at 705, 101 S.Ct. 2587. However, Summers made it abundantly clear that this exception does not apply to arrests. Id. at 697-98, 101 S.Ct. 2587 “The central importance of the probable-cause requirement to the protection of a citizen’s privacy afforded by the Fourth Amendment’s guarantees cannot be compromised [by removing the probable cause requirement for arrests].” Id. at 697, 101 S.Ct. 2587. In fact, the Court’s reasoning was explicitly based on the fact that the detention permitted under the exception would be “significantly less intrusive than an arrest.” Id.
In this case, the Majority agrees Sharp III was arrested, so the exception in Summers could never apply. While a mere detention can turn into a de facto arrest, United States v. Baron, 860 F.2d 911, 914 (9th Cir. 1988), the Majority does not go there. Further, I am aware of no case in which an arrest turned into a mere detention.[4] Consequently, Sharp III continued *926 to be under arrest during his subsequent seizure in the patrol vehicle. Thus, Summers, even if it applied to arrest warrants, could never justify Sharp Ill’s continued seizure. Since the language in Summers is categorical and clear, any reasonable officer would know this.
II. Search of Sharp Ill’s Person
“[EJxcept in certain carefully defined classes of cases, a search of private property without proper consent is ‘unreasonable’ unless it has been authorized by a valid search warrant.” Camara v. Mun. Court of City & Cty. of San Francisco, 387 U.S. 523, 528-29, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). It is obvious that no exception for a search made incident to an unlawful arrest exists; therefore, the deputies had sufficient notice that an unlawful arrest would result in an unlawful search. Thus, the search made incident to Sharp Ill’s unlawful arrest was an obvious violation of the Fourth Amendment’s prohibition of unreasonable searches. Since the deputies had fair warning that the search violated Sharp Ill’s Fourth Amendment rights, they are not entitled to qualified immunity. The District Court was right; this claim should go to trial.
III. Use of Excessive Force Against Sharp III
The Majority claims they are “aware of no controlling constitutional principle ... that is specific enough to alert Deputy Anderson that the degree of force he used in these circumstances was unreasonable.” Let’s examine that premise.
The use of force by a law enforcement officer violates the Fourth Amendment if the force is unreasonable given all the “relevant circumstances.” Hammer v. Gross, 932 F.2d 842, 846 (9th Cir. 1991). Analyzing whether the use of force is unreasonable involves three steps. “First, we must assess the severity of the intrusion on the individual’s Fourth Amendment rights by evaluating ‘the type and amount of force inflicted.’ ” Glenn v. Washington Cty., 673 F.3d 864, 871 (9th Cir. 2011) (quoting Espinosa v. City & Cnty. of S.F., 598 F.3d 528, 537 (9th Cir. 2010)). “Second, we evaluate the government’s interest in the use of force.” Id. In doing so, we must consider “the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Third, “we balance the gravity of the intrusion on the individual against the government’s need for that intrusion.” Glenn, 673 F.3d at 871 (quoting Miller v. Clark Cty., 340 F.3d 959, 964 (9th Cir. 2003)).[5]
Viewing the evidence in the light most favorable to Sharp III, the deputies used considerable force against Sharp III. The deputies arrested Sharp III at gun point and used enough force to tear his rotator cuff. On the other hand, he had committed no crime. Deputy Flores conceded that the deputies arrested Sharp III because “we were trying to just detain everybody!!]” Sharp III posed no immediate threat to the safety of the officers or others. Sharp *927 III walked calmly toward the deputies and was fully compliant. He never resisted or attempted to evade arrest by flight. No reasonable officer would believe using force, let alone significant force, was lawful under these circumstances. None of the Graham factors were present. Since Deputy Anderson had fair warning that his use of force violated Sharp Ill’s Fourth Amendment rights, he is not entitled to qualified immunity. The District Court was right; this claim should go to trial. .
IV. Conclusion
Contrary to precedent regarding qualified immunity, the Majority fails to view the facts in the light most favorable to Sharp III when analyzing these Fourth Amendment claims. Consequently, the Majority improperly grants the deputies qualified immunity for their initial arrest of Sharp III, their use of excessive force against Sharp III, their subsequent search of Sharp III, and their continued arrest of Sharp III. Instead, viewing the facts in the light most favorable to Sharp III, the deputies are not entitled to qualified immunity for any of these constitutional violations. Thus, Sharp Ill’s Fourth Amendment claims stemming from these violations should go to trial right along with Sharp Ill’s claim of First Amendment retaliation. I dissent.

. A case of mistaken identity is not an exception to the probable cause requirement. "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed hy the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (emphasis added) (citing Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). Thus, an arrest warrant coupled with a reasonable belief that the person being arrested is the subject of the arrest warrant gives rise to probable cause to arrest that person. On the *924 other hand, an arrest based on an unreasonable belief that the person being arrested is the subject of the arrest warrant offends the Fourth Amendment.

. Duran provided sufficient notice to the deputies that their conduct was a violation of the Fourth Amendment. Thus, in addition to being an "obvious” violation, the violation was clearly established by a factually analogous case.

. Unless there is a specific exception, the general Fourth Amendment rules apply. See Summers, 452 U.S. at 697-98, 101 S.Ct. 2587. The Summers Court created such an exception for brief detentions made during the execution of a search warrant. However, by nature of being an exception, it applies only to those specific circumstances. Otherwise, the exception would swallow the general rule. Thus, a law enforcement officer cannot commit a Fourth Amendment violation and hope that a court will create or extend an exception covering that violation. The Majority’s reasoning would lead to the conclusion that there can never be a clearly established violation of the Fourth Amendment absent a factually analogous case; officers could always argue that they thought a court would create or extend an exception that covered their conduct.

.I do not mean to say that an arrest could never turn into a detention. However, the facts in this case do not support such a conclusion. Perhaps if the deputies had taken Sharp III out of the patrol car and explicitly informed him that he was not under arrest, the arrest would de-escalate into a detention. As it stands, it is difficult to imagine a scenario where a person is not under arrest when *926 they are forcibly handcuffed and placed into the back of a patrol vehicle. See United States v. Del Vizo, 918 F.2d 821, 824 (9th Cir. 1990) ("There has been an arrest if, under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning.”).

. The Supreme Court recently cautioned that Graham does not "by [itself] create clearly established law outside “an obvious case.' " White, 137 S.Ct. at 552 (emphasis added) . (quoting Brosseau v. Haugen, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)). This is an obvious case.