FILED

DEC 3 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DANIELLA SLATER; et al.,

        Plaintiffs-Appellants,

  v.

SHANNON DEASEY, Deputy; et al.,

        Defendants-Appellees.

No.   17-56708

D.C. No.
5:16-cv-01103-JFW-KK
Central District of California,
Riverside

ORDER

DANIELLA SLATER; et al.,

        Plaintiffs-Appellees,

  v.

SHANNON DEASEY, Deputy; et al.,

        Defendants-Appellants.

No.   17-56751

D.C. No.
5:16-cv-01103-JFW-KK

Before:  NGUYEN and OWENS, Circuit Judges, and ANTOON,[*] District Judge.

The Memorandum Disposition, filed on June 20, 2019, and reported at 776 F. App'x 942 (9th Cir. 2019), is amended as follows:

At 776 F. App'x at 944, the sentence beginning with <Drummond provides "fair warning"> is amended as follows:

We take seriously the Supreme Court's warning that "'clearly established

---

[*]     The Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citation omitted); *see also S.B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) ("We hear the Supreme Court loud and clear."). This case presents no such risk, as *Drummond* provides "fair warning" to Defendants that their alleged actions were unconstitutional.

At 776 F. App'x at 945, the following sentences are added after <testified that he put his foot against Slater's shoulder to prevent Slater from sliding out of the car.>:

> Prior to closing the patrol car door, Deputy Brandt heard Slater make a spitting noise. Before long, Slater had vomited and largely stopped breathing.

At 776 F. App'x at 945, the following footnote is added after the paragraph ending <Defendants were on notice that their use of force violated the Fourth Amendment>:

> *Drummond* specifically involved officers squeezing the breath from an individual "despite his pleas for air." 343 F.3d at 1059. However, no court has interpreted *Drummond* to require a restrained suspect to "plead for air" before receiving Fourth Amendment protection. *McCue v. City of Bangor*, 838 F.3d 55, 64 (1st Cir. 2016) ("[E]xerting significant, continued force on a person's back 'while that [person] is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force.'") (citation omitted); *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008) ("[A]pplying pressure to [a suspect's] upper back, once he was handcuffed and his legs restrained, was constitutionally unreasonable due to the significant risk of positional asphyxiation associated with such actions."); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) ("Creating asphyxiating conditions by putting substantial or significant pressure, such as body weight, on the back of an incapacitated and bound suspect constitutes objectively unreasonable excessive force.").

**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 3 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DANIELLA SLATER; et al., | No. 17-56708 |
| Plaintiffs-Appellants, | D.C. No. 5:16-cv-01103-JFW-KK |
| v. | |
| SHANNON DEASEY, Deputy; et al., | AMENDED MEMORANDUM[*] |
| Defendants-Appellees. | |

| | |
|---|---|
| DANIELLA SLATER; et al., | No. 17-56751 |
| Plaintiffs-Appellees, | D.C. No. 5:16-cv-01103-JFW-KK |
| v. | |
| SHANNON DEASEY, Deputy; et al., | |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted May 13, 2019
Pasadena, California

Before: NGUYEN and OWENS, Circuit Judges, and ANTOON,[**] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Joseph Slater passed away on April 15, 2015, during an arrest by Sheriff's deputies of the County of San Bernardino. Plaintiffs, the children and parents of Slater, contend that Slater died from positional asphyxiation due to pressure applied to his body while he was restrained and on his stomach. They filed suit against the deputies pursuant to 42 U.S.C. § 1983, asserting that the deputies violated the Fourth Amendment by using excessive force during the arrest. The district court granted summary judgment to the deputies and County of San Bernardino, concluding that although the force used during part of the encounter was excessive when viewing the facts in the light most favorable to the Plaintiffs, the deputies were nevertheless entitled to qualified immunity. The Plaintiffs appeal the district court's grant of qualified immunity to the deputies.[1] We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for trial.

Slater, who was known to the deputies from prior contacts as mentally ill with a history of drug addiction, was allegedly pulling wires out of a gas station building.[2] Deputy Deasey responded to the scene and recognized that Slater was

---

** The Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

[1] Defendants cross-appeal the district court's conclusion that their application of the second and third hobbles violated the Fourth Amendment.

[2] Nearby security cameras captured most of the incident.

on drugs.  He placed Slater under arrest, handcuffed him without resistance, and attempted to place him in the back of a patrol car with the intention of taking him to the hospital for psychiatric care.  Slater was initially compliant, but before he was completely in the patrol car, he became agitated and fearful, telling Deputy Deasey several times, "You're not a cop, sir," and, "You're going to kill me." After Slater failed to comply with Deputy Deasey's repeated orders to slide into the car, the deputy deployed three pepper sprays at Slater after warning that he would do so.  Slater reacted by moving around and yelling things like, "You're blinding me."  Although the parties dispute how it happened, Slater ended up on the ground with Deputy Deasey using his body weight to restrain Slater.  Other deputies who had responded to the scene, Gentry and Rude, assisted Deasey in applying a hobble restraint to Slater's ankles, connecting it to his handcuffs from the back.  Due to the slack in the hobble, Slater was able to sit on his own, and he did so without further resistance.  Under these circumstances, the district court found that the application of this first hobble did not constitute excessive force. We agree and affirm the district court's conclusion.

After attempting to wash pepper spray off Slater, the deputies carried him to the patrol car and slid him onto the back seat on his stomach, but Slater was able to partially slide out of the open car door on the other side.  The deputies pushed him back onto the seat and applied second and third hobbles to hogtie Slater—the

3

second hobble to bind his feet and hands more tightly together, and the third hobble to secure him to the car. While the second and third hobbles were applied, Slater remained on his chest and stomach. The officers admitted placing some pressure on Slater's ribs and shoulder during the application of the second and third hobbles. The autopsy showed extensive bruising that Plaintiffs argue is consistent with pressure to Slater's shoulders and back. At some point, the deputies realized that Slater was no longer moving. Fire Department paramedics were already on the scene because Deasey had called for them before applying the first hobble. The deputies removed Slater from the car and the paramedics immediately began to treat him. They transported him to the hospital, but despite medical personnel's attempts to revive him, Slater passed away.

The district court found that the application of the second and third hobbles constituted excessive force under the Fourth Amendment, but that the deputies were entitled to qualified immunity because their actions did not violate clearly established law. We agree that the force was excessive, but viewing the facts in the light most favorable to Plaintiffs, *see Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011), we conclude that Defendants are not entitled to qualified immunity.

When reviewing qualified immunity determinations made at the summary judgment stage, we must consider (1) whether "[t]aken in the light most favorable

4

to the party asserting the injury the facts alleged show the officer's conduct violated a constitutional right," *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (ellipsis omitted), and (2) "'whether the right was clearly established in light of the specific context of the case' such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) (ellipsis omitted) (quoting *Headwaters Forest Def. v. County of Humboldt*, 276 F.3d 1125, 1129 (9th Cir. 2002)); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Defendants bear the burden of proving they are entitled to qualified immunity. *See Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005).

Fourth Amendment excessive force claims require courts to balance "the nature and quality of the intrusion" with the "countervailing governmental interests at stake" to evaluate the objective reasonableness of the force in context. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Further, "a detainee's mental illness" is a factor bearing on the government's interest. *Drummond*, 343 F.3d at 1058 (discussing *Deorle v. Rutherford*, 272 F.3d 1272, 1282–83 (9th Cir. 2001)). We therefore agree with the district court that the force used in applying the second and third hobbles was excessive.

But we do not agree with the district court's conclusion on the second prong of the qualified immunity analysis—whether "it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted." *Drummond*, 343 F.3d at 1056 (quoting *Headwaters*, 276 F.3d at 1129). We take seriously the Supreme Court's warning that "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citation omitted); *see also S.B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) ("We hear the Supreme Court loud and clear."). This case presents no such risk, as *Drummond* provides "fair warning" to Defendants that their alleged actions were unconstitutional. 343 F.3d at 1060–61. In *Drummond*, we clearly established that "squeezing the breath from a compliant, prone, and handcuffed individual . . . involves a degree of force that is greater than reasonable." *Id.* at 1059; *see also id.* at 1059–62. There, officers placed body weight on the arrestee's back and neck while he was handcuffed and lying on his stomach. *Id.* at 1059. Here, viewing the evidence in the light most favorable to Plaintiffs, Slater was hogtied and placed on his stomach in the back of the police car, and the deputies applied pressure to his body during the second and third hobbling, after pressure was already applied to his shoulders in the prone position during the first hobbling. Deputy Gentry testified that he placed pressure on Slater's left rib area with his knee while applying the second hobble. Deputy Brandt, who arrived after the application of the first hobble, and who was positioned on the driver's side of the car, testified that he put his foot against Slater's shoulder to prevent Slater from sliding out of

the car.  Prior to closing the patrol car door, Deputy Brandt heard Slater make a spitting noise.  Before long, Slater had vomited and largely stopped breathing.  We conclude that the circumstances here are sufficiently analogous to *Drummond* such that Defendants were on notice that their use of force violated the Fourth Amendment.[3]

We therefore reverse the district court's grant of qualified immunity as to the use of the second and third hobbles.  We also vacate the district court's dismissal of the Plaintiffs' Fourteenth Amendment familial association claim because the Defendants do not argue and have therefore waived any argument that the facts here would not show deliberate indifference or shock the conscience.[4]  *See*

---

[3]  *Drummond* specifically involved officers squeezing the breath from an individual "despite his pleas for air."  343 F.3d at 1059.  However, no court has interpreted *Drummond* to require a restrained suspect to "plead for air" before receiving Fourth Amendment protection.  *McCue v. City of Bangor*, 838 F.3d 55, 64 (1st Cir. 2016) ("[E]xerting significant, continued force on a person's back 'while that [person] is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force.'") (citation omitted); *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008) ("[A]pplying pressure to [a suspect's] upper back, once he was handcuffed and his legs restrained, was constitutionally unreasonable due to the significant risk of positional asphyxiation associated with such actions."); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) ("Creating asphyxiating conditions by putting substantial or significant pressure, such as body weight, on the back of an incapacitated and bound suspect constitutes objectively unreasonable excessive force.").

[4]  We also vacate the dismissal of the Plaintiffs' state law assault, battery, and wrongful death by negligence in force and restraint claims in light of this decision.

*Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

We affirm the grant of summary judgment as to the Fourth Amendment and Fourteenth Amendment claims for denial of medical care, given Deasey's call for medical personnel to stand by and Slater's immediate treatment.

**AFFIRMED in part, REVERSED in part, and REMANDED.**