# SUPREME COURT OF THE UNITED STATES

RAY WHITE, ET AL. *v.* DANIEL T. PAULY, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF SAMUEL
PAULY, DECEASED ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

No. 16–67.   Decided January 9, 2017

PER CURIAM.

This case addresses the situation of an officer who—having arrived late at an ongoing police action and having witnessed shots being fired by one of several individuals in a house surrounded by other officers—shoots and kills an armed occupant of the house without first giving a warning.

According to the District Court and the Court of Appeals, the record, when viewed in the light most favorable to respondents, shows the following. Respondent Daniel Pauly was involved in a road-rage incident on a highway near Santa Fe, New Mexico. 814 F. 3d 1060, 1064–1065 (CA10 2016). It was in the evening, and it was raining. The two women involved called 911 to report Daniel as a "'drunk driver'" who was "'swerving all crazy.'" *Id.,* at 1065. The women then followed Daniel down the highway, close behind him and with their bright lights on. Daniel, feeling threatened, pulled his truck over at an off-ramp to confront them. After a brief, nonviolent encounter, Daniel drove a short distance to a secluded house where he lived with his brother, Samuel Pauly.

Sometime between 9 p.m. and 10 p.m., Officer Kevin Truesdale was dispatched to respond to the women's 911 call. Truesdale, arriving after Daniel had already left the scene, interviewed the two women at the off-ramp. The women told Truesdale that Daniel had been driving recklessly and gave his license plate number to Truesdale.

The state police dispatcher identified the plate as being registered to the Pauly brothers' address.

After the women left, Officer Truesdale was joined at the off-ramp by Officers Ray White and Michael Mariscal. The three agreed there was insufficient probable cause to arrest Daniel. Still, the officers decided to speak with Daniel to (1) get his side of the story, (2) "'make sure nothing else happened,'" and (3) find out if he was intoxicated. *Id.*, at 1065. The officers split up. White stayed at the off-ramp in case Daniel returned. Truesdale and Mariscal drove in separate patrol cars to the Pauly brothers' address, less than a half mile away. Record 215. Neither officer turned on his flashing lights.

When Officers Mariscal and Truesdale arrived at the address they had received from the dispatcher, they found two different houses, the first with no lights on inside and a second one behind it on a hill. *Id.,* at 217, 246. Lights were on in the second one. The officers parked their cars near the first house. They examined a vehicle parked near that house but did not find Daniel's truck. *Id.,* at 310.

Officers Mariscal and Truesdale noticed the lights on in the second house and approached it in a covert manner to maintain officer safety. Both used their flashlights in an intermittent manner. Truesdale alone turned on his flashlight once they got close to the house's front door. Upon reaching the house, the officers found Daniel's pickup truck and spotted two men moving around inside the residence. Truesdale and Mariscal radioed White, who left the off-ramp to join them.

At approximately 11 p.m., the Pauly brothers became aware of the officers' presence and yelled out "'Who are you?'" and "'What do you want?'" 814 F. 3d, at 1066. In response, Officers Mariscal and Truesdale laughed and responded: "'Hey, (expletive), we got you surrounded. Come out or we're coming in.'" *Ibid.* Truesdale shouted once: "'Open the door, State Police, open the door.'" *Ibid.*

Per Curiam

Mariscal also yelled: "'Open the door, open the door.'" *Ibid.*

The Pauly brothers heard someone yelling, "'We're coming in. We're coming in.'" *Ibid.* Neither Samuel nor Daniel heard the officers identify themselves as state police. Record 81–82. The brothers armed themselves, Samuel with a handgun and Daniel with a shotgun. One of the brothers yelled at the police officers that "'We have guns.'" 814 F. 3d, at 1066. The officers saw someone run to the back of the house, so Officer Truesdale positioned himself behind the house and shouted "'Open the door, come outside.'" *Ibid.*

Officer White had parked at the first house and was walking up to its front door when he heard shouting from the second house. He half-jogged, half-walked to the Paulys' house, arriving "just as one of the brothers said: 'We have guns.'" *Ibid.*; see also Civ. No. 12–1311 (D NM, Feb. 5, 2014), App. to Pet. for Cert. 75–78. When White heard that statement, he drew his gun and took cover behind a stone wall 50 feet from the front of the house. Officer Mariscal took cover behind a pickup truck.

Just "a few seconds" after the "We have guns" statement, Daniel stepped part way out of the back door and fired two shotgun blasts while screaming loudly. 814 F. 3d, at 1066–1067. A few seconds after those shots, Samuel opened the front window and pointed a handgun in Officer White's direction. Officer Mariscal fired immediately at Samuel but missed. "'Four to five seconds'" later, White shot and killed Samuel. *Id.,* at 1067.

The District Court denied the officers' motions for summary judgment, and the facts are viewed in the light most favorable to the Paulys. *Mullenix* v. *Luna,* 577 U. S. \_\_\_, \_\_\_, n. (2015) (*per curiam*) (slip op., at 2, n.). Because this case concerns the defense of qualified immunity, however, the Court considers only the facts that were knowable to the defendant officers. *Kingsley* v. *Hendrickson,* 576 U. S.

___, ___ (2015) (slip op., at 9).

Samuel's estate and Daniel filed suit against, *inter alia*, Officers Mariscal, Truesdale, and White. One of the claims was that the officers were liable under Rev. Stat. §1979, 42 U. S. C. §1983, for violating Samuel's Fourth Amendment right to be free from excessive force. All three officers moved for summary judgment on qualified immunity grounds. White in particular argued that the Pauly brothers could not show that White's use of force violated the Fourth Amendment and, regardless, that Samuel's Fourth Amendment right to be free from deadly force under the circumstances of this case was not clearly established.

The District Court denied qualified immunity. A divided panel of the Court of Appeals for the Tenth Circuit affirmed. As to Officers Mariscal and Truesdale, the court held that "[a]ccepting as true plaintiffs' version of the facts, a reasonable person in the officers' position should have understood their conduct would cause Samuel and Daniel Pauly to defend their home and could result in the commission of deadly force against Samuel Pauly by Officer White." 814 F. 3d, at 1076. The panel majority analyzed Officer White's claim separately from the other officers because "Officer White did not participate in the events leading up to the armed confrontation, nor was he there to hear the other officers ordering the brothers to 'Come out or we're coming in.'" *Ibid.* Despite the fact that "Officer White . . . arrived late on the scene and heard only 'We have guns' . . . before taking cover behind a stone wall," the majority held that a jury could have concluded that White's use of deadly force was not reasonable. *Id.,* at 1077, 1082. The majority also decided that this rule—that a reasonable officer in White's position would believe that a warning was required despite the threat of serious harm—was clearly established at the time of Samuel's death. The Court of Appeals' ruling relied on general

statements from this Court's case law that (1) "the reasonableness of an officer's use of force depends, in part, on whether the officer was in danger at the precise moment that he used force" and (2) "if the suspect threatens the officer with a weapon[,] deadly force may be used if necessary to prevent escape, and if[,] where feasible, some warning has been given." *Id.*, at 1083 (citing, *inter alia*, *Tennessee* v. *Garner*, 471 U. S. 1 (1985), and *Graham* v. *Connor*, 490 U. S. 386 (1989); emphasis deleted; internal quotation marks and alterations omitted). The court concluded that a reasonable officer in White's position would have known that, since the Paulys could not have shot him unless he moved from his position behind a stone wall, he could not have used deadly force without first warning Samuel Pauly to drop his weapon.

Judge Moritz dissented, contending that the "majority impermissibly second-guesses" Officer White's quick choice to use deadly force. 814 F. 3d, at 1084. Judge Moritz explained that the majority also erred by defining the clearly established law at too high a level of generality, in contravention of this Court's precedent.

The officers petitioned for rehearing en banc, which 6 of the 12 judges on the Court of Appeals voted to grant. In a dissent from denial of rehearing, Judge Hartz noted that he was "unaware of any clearly established law that suggests . . . that an officer . . . who faces an occupant pointing a firearm in his direction must refrain from firing his weapon but, rather, must identify himself and shout a warning while pinned down, kneeling behind a rock wall." 817 F. 3d 715, 718 (CA10 2016). Judge Hartz expressed his hope that "the Supreme Court can clarify the governing law." *Id.,* at 719.

The officers petitioned for certiorari. The petition is now granted, and the judgment is vacated: Officer White did not violate clearly established law on the record described by the Court of Appeals panel.

Qualified immunity attaches when an official's conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix* v. *Luna*, 577 U. S., at ___–___ (slip op., at 4–5). While this Court's case law "'do[es] not require a case directly on point'" for a right to be clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.,* at ___ (slip op., at 5). In other words, immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Ibid.*

In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases. See*, e.g., City and County of San Francisco* v. *Sheehan*, 575 U. S. ___, ___, n. 3 (2015) (slip op., at 10, n.3) (collecting cases). The Court has found this necessary both because qualified immunity is important to "'society as a whole,'" *ibid.*, and because as "'an immunity from suit,'" qualified immunity "'is effectively lost if a case is erroneously permitted to go to trial,'" *Pearson* v. *Callahan*, 555 U. S. 223, 231 (2009).

Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." *Ashcroft* v. *al-Kidd*, 563 U. S. 731, 742 (2011). As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. *Anderson* v. *Creighton*, 483 U. S. 635, 640 (1987). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.,* at 639.

The panel majority misunderstood the "clearly established" analysis: It failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment. Instead, the majority relied on *Graham, Garner,* and their

Court of Appeals progeny, which—as noted above—lay out excessive-force principles at only a general level. Of course, "general statements of the law are not inherently incapable of giving fair and clear warning" to officers, *United States* v. *Lanier*, 520 U. S. 259, 271 (1997), but "in the light of pre-existing law the unlawfulness must be apparent," *Anderson* v. *Creighton*, *supra*, at 640. For that reason, we have held that *Garner* and *Graham* do not by themselves create clearly established law outside "an obvious case." *Brosseau* v. *Haugen*, 543 U. S. 194, 199 (2004) (*per curiam*); see also *Plumhoff* v. *Rickard*, 572 U. S. \_\_\_, \_\_\_ (2014) (slip op., at 13) (emphasizing that *Garner* and *Graham* "are 'cast at a high level of generality'").

This is not a case where it is obvious that there was a violation of clearly established law under *Garner* and *Graham*. Of note, the majority did not conclude that White's conduct—such as his failure to shout a warning—constituted a run-of-the-mill Fourth Amendment violation. Indeed, it recognized that "this case presents a unique set of facts and circumstances" in light of White's late arrival on the scene. 814 F. 3d, at 1077. This alone should have been an important indication to the majority that White's conduct did not violate a "clearly established" right. Clearly established federal law does not prohibit a reasonable officer who arrives late to an ongoing police action in circumstances like this from assuming that proper procedures, such as officer identification, have already been followed. No settled Fourth Amendment principle requires that officer to second-guess the earlier steps already taken by his or her fellow officers in instances like the one White confronted here.

On the record described by the Court of Appeals, Officer White did not violate clearly established law. The Court notes, however, that respondents contend Officer White arrived on the scene only two minutes after Officers

Truesdale and Mariscal and more than three minutes before Daniel's shots were fired. On the assumption that the conduct of Officers Truesdale and Mariscal did not adequately alert the Paulys that they were police officers, respondents suggest that a reasonable jury could infer that White witnessed the other officers' deficient performance and should have realized that corrective action was necessary before using deadly force. Brief in Opposition 11, 22, n. 5. This Court expresses no position on this potential alternative ground for affirmance, as it appears that neither the District Court nor the Court of Appeals panel addressed it. The Court also expresses no opinion on the question whether this ground was properly preserved or whether—in light of this Court's holding today—Officers Truesdale and Mariscal are entitled to qualified immunity.

For the foregoing reasons, the petition for certiorari is granted; the judgment of the Court of Appeals is vacated; and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

RAY WHITE, ET AL. *v.* DANIEL T. PAULY, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF SAMUEL
PAULY, DECEASED ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

No. 16–67.  Decided January 9, 2017

JUSTICE GINSBURG, concurring.

I join the Court's opinion on the understanding that it does not foreclose the denial of summary judgment to Officers Truesdale and Mariscal.  See 814 F. 3d 1060, 1068, 1073, 1074 (CA10 2016) (Court of Appeals emphasized, repeatedly, that fact disputes exist on question whether Truesdale and Mariscal "adequately identified themselves" as police officers before shouting "Come out or we're coming in" (internal quotation marks omitted)).  Further, as to Officer White, the Court, as I comprehend its opinion, leaves open the propriety of denying summary judgment based on fact disputes over when Officer White arrived at the scene, what he may have witnessed, and whether he had adequate time to identify himself and order Samuel Pauly to drop his weapon before Officer White shot Pauly.  Compare *id.*, at 1080, with *ante,* at 8.  See also Civ. No. 12–1311 (D NM, Feb. 5, 2014), pp. 7, and n. 5, 9, App. to Pet. for Cert. 75–76, and n. 5, 77 (suggesting that Officer White may have been on the scene when Officers Truesdale and Mariscal threatened to invade the Pauly home).