NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted March 8, 2017[*]
Decided June 16, 2017

## *Before*

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

| | |
|---|---|
| No. 16-3049 | Appeal from the United States District Court for the Western District of Wisconsin. |
| THADDEUS JASON KAROW, *Plaintiff-Appellant*, | |
| *v.* | |
| LARRY FUCHS, *et al.*, *Defendants-Appellees*. | No. 13-cv-798-jdp James D. Peterson, *Chief Judge*. |

## Order

Thaddeus Karow asked the warden of his prison in Wisconsin to recognize Asatru as a religion and allow meetings of adherents. After the warden declined, he placed this

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See Fed. R. App. P. 34(a)(2)(C).

ad in *Rune Quest*, a monthly newsletter: **"!! WANTED!! Help!** Trying to get Asatru recognized in the WI prison system as a legitimate religion, and separate from Wicca. If you have any ideas please contact: **Thaddeus J. Karow** #191554 c/o Box 4000 – New Lisbon, WI 53950".

An officer confiscated this issue of the newsletter and charged Karow with misconduct. A disciplinary proceeding was resolved in Karow's favor after the board decided that placing the ad had not violated the rules the officer cited. A typewriter the officer had taken from Karow was returned to him. But in this suit under 42 U.S.C. §1983 he contends that he is entitled to damages because three officers or guards have continued to threaten him with discipline if he places more ads about Asatru. Karow discontinued the advertisement and has not been charged again. The district court granted summary judgment to the defendants, ruling that they are entitled to qualified immunity because it has not been clearly established that prisoners are entitled to place public solicitations of this kind.

Wisconsin views Asatru as a racist sect and a potential front for gang activity. The officer who charged Karow with misconduct stated that other parts of the *Rune Quest* issue in which the ad appeared seemed to have racist overtones, and he added that the advertisement may have contained gang-related code. Karow contends that these beliefs are mistaken, and we shall assume that they are. The Bureau of Prisons allows the practice of Asatru in federal prisons, and many states likewise treat it as a legitimate religion. But whether particular disciplinary charges are correct is a subject to be resolved by prison disciplinary boards, not by damages actions under §1983. The board ruled in Karow's favor. That one officer threatened to file a new disciplinary charge if Karow placed further ads does not affect this proposition; no rule of federal law endows the decisions of prison disciplinary committees with preclusive effect and forbids a prison's staff from asking the committee to take another look at an issue.

Public officials are entitled to qualified immunity unless their acts violate clearly established law. See, e.g., *White v. Pauly*, 137 S. Ct. 548 (2017). Neither the Supreme Court nor any court of appeals has held that prisoners are entitled to place advertisements in an effort to attract support for a proposal to change a prison system's policies. To the contrary, many decisions have held that a prisoner's efforts to speak directly to the public at large or to the press are subject to restrictions by wardens and other officials. See, e.g., *Saxbe v. Washington Post Co.*, 417 U.S. 843 (1974); *Hammer v. Ashcroft*, 570 F.3d 798 (7th Cir. 2009) (en banc). Karow had every right to contact lawyers who might have been willing to help him and to initiate litigation seeking an injunction requiring the prison system to recognize Asatru. By choosing a different route—one that could have entailed gang code, even if it did not in fact—Karow invited a reaction by the prison

system. The district court was right to conclude that the defendants are entitled to qualified immunity from damages.

AFFIRMED

ROVNER, *Circuit Judge*, dissenting.

Thaddeus Karow placed an ad in a religious newsletter, seeking "ideas" for how to have his religion recognized as "legitimate" in the Wisconsin prison system. Officers viewed the ad as a prohibited call for collective action, placed Karow in segregation, and issued him a conduct report. Even though a hearing committee exonerated Karow of violating prison rules, the officers continued to threaten Karow with punishment if he ran the ad again. The majority, in concluding that the officers are entitled to qualified immunity on Karow's claim that the officers violated the First Amendment, misframes the issue by asking whether prisoners have a clear right to advertise. But it is Karow's message, not its medium, that matters. I view Karow's speech as a request for legal assistance that, because no reasonable officer would believe it threatened legitimate prison interests, was clearly protected speech. I would therefore deny the officers qualified immunity on Karow's First Amendment claim.

Although the majority recounts many of the facts, a fuller story is helpful. Karow practices Asatru (also known as Wotanism or Odinism), a pre-Christian European religion that worships Norse gods. *See Lindell v. McCallum*, 352 F.3d 1107, 1108 (7th Cir. 2003); THE ASATRU ALLIANCE, http://www.asatru.org/ (visited Feb. 25, 2017). Asatru has ties to white supremacist gangs in many prisons, but some adherents practice a non-racial, nature-based version. *See generally* Casey Sanchez, *Supreme Court Requires Prisons Give Special Consideration to Racist Pagans*, SOUTHERN POVERTY LAW CENTER, INTELLIGENCE REPORT (Aug. 21, 2009), https://www.splcenter.org/fighting-hate/ intelligence-report/2009/supreme-court-requires-prisons-give-special-consideration- racist-pagans. As Wisconsin prison officials explain, their prison system has refused to "acknowledge racist religions," *Lindell*, 352 F.3d at 1108, but the federal prison system and many states now permit group worship by Asatruans. *See Hummel v. Donahue*, No. 1:07-cv-1452-DFH-TAB, 2008 WL 2518268, at *8 n.2 (S.D. Ind. June 19, 2008) (issuing permanent injunction ordering Indiana prisons to permit Odinist group worship, noting that at least 13 states and federal system allowed the practice by 2008).

Karow wants to get Wisconsin prisons to permit group worship by Asatruans. He submitted a prison form containing his request and explained that the beliefs and "ritual tools" of Asatruans differ from that of other pagans. The warden denied Karow's request, explaining that the prison's limited resources prevented accommodating him. Unsure of his next step, Karow placed this ad in Rune Quest, an Asatruan monthly newsletter (the imprinted docket numbers come from our case-filing system):

!!WANTED!!

Help! Trying to get Asatrú recognized in the WI prison system as a legitimate religion, and separate from Wicca. If you have any ideas please contact:
Thaddeus J. Karow #191554
c/o Box 4000 - New Lisbon, WI 53950

This ad got Karow in trouble. When his copy of the newsletter arrived at the prison, Lieutenant Mathew Martinson, the prison's Security Threat Groups (i.e., gang) Coordinator, admonished Karow that he could not receive the issue. Martinson viewed it as soliciting other inmates to participate in unauthorized group activity, and he was also concerned with racist overtones in an unrelated article. Karow responded that he had placed the ad to "seek[] legal assistance in getting Asatru recognized," not to thwart prison rules against unauthorized group meetings.

Roughly a month later, Martinson and the Security Director, Larry Fuchs, put Karow in temporary segregation and issued him a conduct report on two charges. Martinson also took Karow's typewriter. First they charged that Karow had engaged in "unsanctioned group activity" under Wisconsin Administrative Code DOC § 303.24 by placing an ad "to attempt to solicit others to contact him." They also charged Karow with receiving his typewriter in violation of § 303.36, which bars inmates from receiving an item on credit or without paying for it. (Martinson had learned that Karow received the typewriter from Rune Quest's publisher.) Karow remained in segregation for three weeks, until a ruling by the Hearing Committee, the body charged with adjudicating the report, found him not guilty on both charges. The committee also ordered Martinson to return Karow's typewriter. A grievance examiner later gave Karow his copy of the Rune Quest newsletter.

Despite the "not guilty" ruling, Martinson and Fuchs continued to punish Karow. First, believing that the Committee's decision was "incorrect," Martinson refused to return Karow's typewriter. He now said that it was "not approved to be donated from a religious group through the chapel." Karow filed a grievance seeking its return. A complaint examiner consulted the warden, who ordered the typewriter returned to Karow. Later, when another issue of Rune Quest, still bearing Karow's ad, arrived at the prison, Martinson (with Fuchs's approval) told Karow that they would issue another

conduct report unless Karow withdrew the ad. Martinson threatened Karow that "severe discipline" would result. Karow acquiesced and asked the publisher of Rune Quest to remove his name from all future editions.

Karow sued Martinson and Fuchs, contending that by punishing him for his ad they violated his First Amendment right to seek legal assistance. He contends that he placed the ad because he "needed help in litigating" the warden's refusal to recognize Asatru. The defendants countered that Karow's ad was best understood not as a solicitation of legal assistance, but as a security threat and "a call to other Asatru inmates to come together to form an unauthorized group in violation of prison rules." The district court, in granting summary judgment for the defendants, acknowledged that the ad was "not obviously a security concern." It also observed that the Hearing Committee's not-guilty finding "suggests that prison officials themselves do not believe that a legitimate governmental interest is served by restricting plaintiff's advertisement" and "raises an inference that defendants … were not motivated by rational penological interests." But the court concluded that Karow could not "show a clearly established constitutional right to send his advertisement to other prisoners."

The majority agrees with the district court on this last point. It concludes that prisoners do not have a clearly established right "to place advertisements in an effort to attract support for a proposal to change a prison system's policies."

In my view, Karow was punished for engaging in clearly protected speech. Inmates retain First Amendment rights unless prison officials can demonstrate that a restriction is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Watkins v. Kapser*, 599 F.3d 791, 796–97 (7th Cir. 2010); *Pearson v. Wellborn*, 471 F.3d 732, 741 (7th Cir. 2006). Prison officials must justify with *some* evidence restrictions on prisoner speech, *Williams v. Hansen*, 837 F.3d 809, 810 (7th Cir. 2016), because "a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational," *Turner*, 482 U.S. at 89–90. With no evidence in the record suggesting that the ad's message threatened prison security, the majority simply observes that "many decisions have held that a prisoner's efforts to speak directly to the public at large or to the press are subject to restrictions." That is true, but those restrictions had to be connected to a legitimate prison interest because the law clearly establishes that prison officials cannot penalize protected speech that presents no risk to legitimate prison interests. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009); *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996).

Three reasons persuade me that no reasonable officer would have interpreted Karow's ad as endangering a legitimate prison concern. First, unless placing *any* ad, regardless of content, threatens prison safety (a point the prison does not argue), it is the message in the ad, rather than the medium of advertising, that matters. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (distinguishing between prisoner ad advocating political candidate, which is protected speech, and ad seeking to rent escape helicopter, which is not). And the message in Karow's ad, reasonably construed, is harmless. It did not call on inmates to join unauthorized group activity. It sought only "Help" with "ideas" "to get Asatru recognized" as a "legitimate religion."

Second, inmates have a constitutionally protected right to seek legal assistance *from one another*. *See Johnson v. Avery*, 393 U.S. 483, 490 (1969) (invalidating prison regulation barring inmates from assisting one another with petitions for postconviction relief). Even in the context of civil-rights actions, prison officials cannot bar inmates from furnishing legal assistance to one another unless the state provides a reasonable alternative to that assistance. *See Wolff v. McDonnell*, 418 U.S. 539, 578–80 (1974); *Williams v. Lane*, 851 F.2d 867, 878 (7th Cir. 1988) (confirming that prison officials cannot "retaliate against prisoners who attempt to exercise their constitutional rights" to seek legal assistance). The majority suggests that Karow had such an alternative. As they see it, he was free "to contact lawyers who might have been willing … to initiate litigation seeking an injunction." But Karow's ad was a reasonable means of seeking names of lawyers who might have helped him. Indeed, it seems to me much more likely that Karow would be able to locate legal help through an ad directed to adherents of Asatru than by making cold inquiries to the bar at large. Yet the defendants punished him for placing it.

Finally, the defendants had ample reason to know that the ad, as written, was harmless. They knew that the Hearing Committee had found Karow "not guilty" of the charges that the ad violated prison rules. Yet they persisted in punishing Karow for renewing his request for legal help. The majority portrays their persistence as simply an attempt to "ask[] the committee to take another look" at the issue. But that portrayal is not correct because the defendants did not approach the committee; instead they just disciplined Karow again for his speech, despite his exoneration. Moreover they must realize that the ad is harmless because they have misrepresented its content in both the district court and here, giving it a more sinister edge. In citing the ad, they consistently omit two words from it. The defendants deleted the words "Trying to" that appear before the word "get." In their rendition, the ad reads: "Help! get Asatru recognized in the WI prison system …," which sounds like a command to organize, rather than the simple plea for ideas in "Help! Trying to get Asatru recognized… ."

Because a reasonable officer would have viewed Karow's ad as a solicitation for legal help, I would conclude that Karow's speech was protected. And because a reasonable officer also would know that punishing protected speech violates the Constitution, I would also conclude that the officers' actions are not entitled to qualified immunity. Therefore I would vacate the district court's grant of qualified immunity to Martinson and Fuchs.