# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1058
_____

Estate of Leon Walker, Jr.; Wanda Jean Millbrook; Correll Taylor Millbrook;
Victor Wayne Millbrooks, Jr.

*Plaintiffs - Appellees*

v.

Building Inspector Hershell Wallace, in his individual capacity

*Defendant - Appellant*

Detective Ronald E. Vaughn, a St. Louis Metropolitan Police Department police
officer in his individual capacity; City of St. Louis, Missouri

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 13, 2017
Filed: February 8, 2018

_____

Before SMITH, Chief Judge, ARNOLD and KELLY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

One morning, a SWAT team raided a St. Louis house in which the plaintiffs lived to execute a search warrant. According to the warrant affidavit, a detective suspected that the house contained heroin, illegal firearms, and drug-trafficking paraphernalia. The team knocked on the door, yelled "police," and quickly began striking the door with a battering ram. The team also tossed a "flash bang device" through a window and into the house, and after gaining entry, the team handcuffed the residents who were present and brought them into a front room. The search turned up marijuana, some drug paraphernalia, and three firearms, which the plaintiffs' attorney characterized as some old firearms and some personal-use marijuana.

The detective then called for a building inspector to inspect the house under a city program called "Project 87." *See* Saint Louis, Mo., Code of Ordinances ch. 25.32.020, § 104.6. Under that program, police notify a building inspector of properties that constitute a "nuisance," which is defined as a code violation that "if not promptly corrected will constitute a fire hazard or a serious threat to the life, health or safety of the occupants of the building, structure, or portion thereof in which the violations occur." If the owner or occupant of the building refuses to permit a building inspection, the building inspector must immediately condemn the building and issue an order to vacate, and if the owners or occupants refuse to leave, the police must immediately remove them. The detective testified that it was police-department policy to request a Project 87 inspection routinely after a search warrant was executed. He did not identify any potential "nuisance" before he requested a Project 87 inspection in this case.

Building inspector Hershell Wallace arrived after receiving the inspection referral. He testified that he did not notice any potential building-code violations when he arrived except for the window that the police themselves had just broken. He approached one of the residents, 29-year-old Victor Millbrooks, and asked him to sign a consent-to-search form. At this point the parties' accounts begin to diverge, and since we are reviewing an order denying Wallace's motion for summary judgment, we

construe the facts in a light most favorable to the house's residents. *See Aulick v. Skybridge Ams., Inc.*, 860 F.3d 613, 620 (8th Cir. 2017). According to Millbrooks, he was handcuffed for no more than ninety minutes while the SWAT team searched the house, and the police uncuffed him only to sign the consent-to-search form and to use the restroom. Millbrooks testified that Wallace "demanded" that Millbrooks sign the consent-to-search form by saying that "[b]asically if you don't sign this, I guess the house . . . forecloses or something was going to happen with the house. We would get put out, something like that," so "it wasn't like I ha[d] an option." He also testified that no one directed any threats toward him. Millbrooks then signed the form and Wallace conducted the inspection, which turned up only minor violations.

When the residents of the house sued Wallace under 42 U.S.C. § 1983, claiming that he unreasonably searched the house in violation of the Fourth Amendment, Wallace moved for summary judgment on the ground that qualified immunity protected him from suit. After the district court denied the motion, Wallace filed this interlocutory appeal. Because we conclude that Wallace did not violate clearly established law, we reverse and remand.

We first consider our jurisdiction to review this interlocutory appeal. The plaintiffs have moved to dismiss the appeal because, they argue, Wallace's request for qualified immunity was based on evidence insufficiency, or at least the district court viewed it that way when it denied the motion. It is true that, though "[t]he pretrial denial of qualified immunity is an appealable final order to the extent it turns on an issue of law," *Jackson v. Gutzmer*, 866 F.3d 969, 975 (8th Cir. 2017), we do not have jurisdiction to the extent that the denial turns on genuine issues of material fact. *New v. Denver,* 787 F.3d 895, 899 (8th Cir. 2015). The district court did indeed mention that "disputes of fact remain regarding whether Victor voluntarily consented to the inspection," and we have said that when the appeal from the denial of qualified immunity turns on whether the plaintiff consented to a search, which is a factually

-3-

intensive inquiry, we lack jurisdiction. *See Pace v. City of Des Moines*, 201 F.3d 1050, 1053 (8th Cir. 2000).

We conclude nonetheless that we have jurisdiction. Wallace's briefs and oral argument make clear that he is challenging whether he violated clearly established law when he inspected the plaintiffs' house after receiving Millbrooks's signature on a consent-to-search form. Whether certain actions violate clearly established law is the archetypal question of law that is reviewable on interlocutory appeal. *See Johnson v. Jones*, 515 U.S. 304, 318 (1995). We have said that the typical "appealable issue is whether the federal right allegedly infringed was 'clearly established.'" *See White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008). This is precisely what Wallace asks us to review. The way in which the district court resolved the motion does not necessarily govern whether we have jurisdiction. *See New*, 787 F.3d at 899–901. Where the appellant does not challenge that factual disputes exist but rather whether, even if the facts are construed in a light most favorable to the appellees, he violated a clearly established right, we have jurisdiction over the interlocutory appeal. We therefore turn to a consideration of the merits.

An individual defendant is entitled to qualified immunity if his conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam). To be clearly established, preexisting law must make the unlawfulness of the officials' conduct apparent so that they have "fair and clear warning" they are violating the constitution; qualified immunity therefore protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 551–52. Because qualified immunity protects officials who make bad guesses in gray areas, *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004), it gives them breathing room to make reasonable but mistaken judgments. *Blazek v. City of Iowa City*, 761 F.3d 920, 922 (8th Cir. 2014). The plaintiffs have the burden of showing that the law was clearly established. *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013).

The district court denied Wallace qualified immunity because, if the jury believed the plaintiffs' version of the facts, then the evidence "could show that the consent was not voluntary." True, but that is not the correct inquiry. The correct inquiry is whether, even if we construe the facts in a light most favorable to the plaintiffs, a reasonable official in Wallace's position would have known that he was violating the constitution when he searched the plaintiffs' house after receiving signed consent to do so in the particular circumstances. We believe that Wallace, at worst, made a bad guess in a gray area of the law—but the law gave him the breathing room to make such a guess.

First, determining whether consent is voluntary requires a highly particular look at all the relevant circumstances. *See United States v. Comstock*, 531 F.3d 667, 676 (8th Cir. 2008). In *Comstock* we identified no fewer than eleven non-exclusive considerations that can bear on whether consent was voluntary. *See id.* at 676–77. Since questions of consent necessarily turn on the particular facts of a case, it may be hard to show that prior decisions should have put Wallace on notice that his search under the circumstances was unconstitutional or that every reasonable official in his position would have understood that he was violating a constitutional right. *See Pauly*, 137 S. Ct. at 552. We do not mean that officials are always entitled to qualified immunity when dealing with questions of consent; it is easy to imagine facts that would alert a reasonable person that consent was not voluntarily given. We mean only to emphasize that officials should be given some leeway when acting in legally murky environments.

We believe that both the plaintiffs and the district court defined the right in question here too generally. The plaintiffs focus on the presumptive unreasonableness of searching a house (whether for evidence of a crime or for building code violations) without a warrant. The district court began its analysis with the observation that a government official's warrantless entry into a house does not violate the Fourth Amendment when one voluntarily consents to the entry, only to note then that consent

-5-

may not have been voluntarily given here. But "clearly established law should not be defined at a high level of generality" and must be particularized to the facts of the case so that the unlawfulness of an official's actions are apparent. *Id.* Context is critical in determining qualified immunity in Fourth Amendment cases. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam). The first principles that the district court and the plaintiffs emphasized can only go so far. Nowhere do they identify any case applying these first principles in a context sufficiently similar to the situation in which Wallace found himself when he searched the plaintiffs' house. Though the plaintiffs need not provide a case directly on point, some existing precedent must place the question beyond debate, or the conduct must be so obviously unconstitutional that no precedent is needed. *See Pauly*, 137 S. Ct. at 551–52. The plaintiffs have failed to carry their burden on this point.

Wallace alerts us to a case that holds that a building inspector in circumstances very similar to the present ones did not violate the constitution at all. *See* Memorandum, *Appel v. City of St. Louis*, No. 4:05-cv-772 (E.D. Mo. Aug. 15, 2007), ECF No. 168. In that case, a St. Louis building inspector and several police officers arrived at a residence to perform a Project 87 inspection. The building inspector requested the occupant's consent to search, and the occupant asked about his right to refuse. The building inspector told the occupant that failure to consent would result in immediate condemnation and would force the occupant to vacate the residence, so the occupant signed a consent-to-search form. *Id.* at 6. In granting the building inspector qualified immunity, the court considered whether the occupant voluntarily consented to the search, noting that whether consent was voluntary was a factually intensive question. The court explained that the occupant was an adult with full capacity who inquired about his rights and who was not detained or questioned for very long, threatened with physical harm or with punishment, or placed under arrest. The court noted that, though a large police presence at a housing inspection was unusual, it was not sufficiently intimidating to deprive an adult of the ability to give informed, knowing, and voluntary consent. That court also pointed out that, though

the threat to condemn the house was disconcerting, it was not an empty threat because the building inspector had authority under the ordinance to condemn the house temporarily, and providing a citizen with accurate information about his rights does not invalidate his consent. The court ultimately concluded that the building inspector did not violate the Fourth Amendment. *Id.* at 26–27.

The district court distinguished *Appel* on the ground that there was particularized knowledge of a building code violation so there was probable cause for the search. But Wallace does not contend that he had probable cause to search the plaintiffs' house; he contends instead that he had consent from one of the house's occupants. Wallace did not need probable cause if he received voluntary consent. *See United States v. Wolff*, 830 F.3d 755, 758 (8th Cir. 2016). In short, this is a consent case, and probable cause does not seem all that relevant to the issue before us.

We acknowledge that it appears that the occupant in *Appel* was evidently not in handcuffs when he gave his consent to search, but we have held that even a person who is arrested and handcuffed for two hours can voluntarily consent to a search, *see, e.g.*, *Comstock*, 531 F.3d at 677–78; so the handcuffs are not enough to deny Wallace the protection of *Appel*'s shade and render Millbrooks's consent obviously involuntary. The plaintiffs themselves acknowledge that the fact that Millbrooks was handcuffed is not "the hinge on which the immunity analysis turns." But even if *Appel* is distinguishable on this ground or others and can somehow be made to say that the consent given in this case was involuntary, we still think that the plaintiffs have failed to demonstrate how every reasonable official in Wallace's shoes would have believed that he was violating the plaintiffs' rights. A single case, which is not even a binding precedent in the district in which it was decided, seems hardly enough to count as one that establishes a clear legal principle. One swallow does not a summer make.

For these reasons, the plaintiffs have not carried their burden to show that the unconstitutional nature of Wallace's conduct was clearly established. We therefore reverse and remand for further proceedings.

KELLY, Circuit Judge, concurring.

I agree that Hershell Wallace is entitled to qualified immunity. I write to note that St. Louis's municipal liability is not before us on this appeal. The plaintiffs made three claims relating to Wallace's Project 87 inspection. One of those claims sought to hold Wallace personally liable—this appeal disposes of that claim. The remaining two claims seek to hold the City of St. Louis liable for an unconstitutional policy under Monell v. Dep't of Social Servs. of N.Y.C., 436 U.S. 658 (1978). We express no opinion on the district court's denial of summary judgment on these Monell claims. And, because we grant Wallace qualified immunity based on a lack of clearly-established law, our ruling is not determinative of whether his employer is liable for effectuating an unconstitutional policy. See Owen v. City of Independence, Mo., 445 U.S. 622, 657–58 (1980). Thus, our opinion does not foreclose the plaintiffs from pursuing their Monell claims based on Project 87 searches.

_____