# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-3284

_____

Jill Dillard; Jessa Seewald; Jinger Vuolo; Joy Duggar

*Plaintiffs - Appellees*

v.

City of Springdale, Arkansas; Washington County, Arkansas; Kathy O'Kelley;
Ernest Cate

*Defendants*

Rick Hoyt, in his individual and official capacities

*Defendant - Appellant*

Steve Zega; Bauer Publishing Company, L.P.; Bauer Magazine, L.P.; Bauer Media
Group, Inc.; Bauer, Inc.; Heinrich Bauer North America, Inc.; Bauer Media Group
USA, LLC; Does, 1-10

*Defendants*

_____

No. 17-3287

_____

Jill Dillard; Jessa Seewald; Jinger Vuolo; Joy Duggar

*Plaintiffs - Appellees*

v.

City of Springdale, Arkansas; Washington County, Arkansas

*Defendant*s

Kathy O'Kelley, in her individual and official capacities; Ernest Cate, in his individual and official capacities

*Defendants - Appellants*

Rick Hoyt; Steve Zega; Bauer Publishing Company, L.P.; Bauer Magazine, L.P.; Bauer Media Group, Inc.; Bauer, Inc.; Heinrich Bauer North America, Inc.; Bauer Media Group USA, LLC; Does, 1-10

*Defendant*s

_____

Appeals from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: December 12, 2018
Filed: July 12, 2019

_____

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.

_____

SMITH, Chief Judge.

Plaintiff-appellees Jill Dillard, Jessa Seewald, Jinger Vuolo, and Joy Duggar allege violations of their constitutional right to privacy and of Arkansas tort law in connection with defendant-appellants' decisions to release information identifying them as victims of childhood sexual abuse. The appellees sued several parties and entities, but this appeal concerns their constitutional and tort claims against City of Springdale ("City") officials Kathy O'Kelley and Ernest Cate, and Washington County ("County") official Rick Hoyt. O'Kelley, Cate, and Hoyt (collectively, "the

-2-

officials") moved to dismiss the appellees' constitutional claims on the basis of qualified immunity and the tort claims on the bases of qualified and statutory immunity. The district court[1] denied their motion. Because we agree that the officials were not entitled to either qualified or statutory immunity, we affirm.

## I. *Background*

The appellees are sisters and stars of the popular reality show *19 Kids and Counting*. The show chronicles the lives of Jim Bob and Michelle Duggar and their 19 children. In 2006, the appellees, as well as their siblings and parents, were interviewed as part of a police investigation into sexual misconduct by the appellees' brother, Josh Duggar. The appellees were under the age of 16 at the time of the alleged misconduct and at the time of the investigation. The police promised the appellees and their family that their statements would remain confidential. The family's statements were documented in reports by both the City Police Department and the County Sheriff's Department. The County prosecutor also filed a Family in Need of Services (FINS) petition pursuant to a request by the City police. No charges were ever filed against Josh.

In 2015, a tabloid publisher submitted Freedom of Information Act (FOIA) requests to the City and County to access these reports. On May 19, 2015, the tabloid published an article naming Josh as the target of an "Underage Sex Probe" and promised more details to follow. *Dillard v. City of Springdale, Ark.*, No. 5:17-cv-05089, 2017 WL 4392049, at *1 (W.D. Ark. Sept. 29, 2017). The original article identified Josh as the perpetrator and unnamed sisters—later identified as the appellees—as the victims. On May 20, the City released its report to the tabloid; the next day, the County released its report as well. O'Kelley, the City Police Chief, and Cate, the City Attorney, directed the release of the City's report, while Hoyt, an

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

officer in the County Sheriff's Office, directed the release of the County's report. The appellees describe the released City report, for example, as containing "graphic descriptions about their molestation." Compl. at 17, ¶ 58, *Dillard v. City of Springdale, Ark.*, No. 5:17-cv-05089 (W.D. Ark. May 18, 2017), ECF No. 1. Though the appellees' names were redacted, the reports contained other identifying information—such as the appellees' parents' names and the appellees' address and ages.

At the district court, the officials claimed FOIA required them to release the reports in the time and manner in which they did. However, the appellees alleged that the officials hastily and wrongfully released the reports. We read the appellees' complaint as alleging that the officials released the reports in response to pressure from the press in an effort to promote the appearance of transparency.

Following the officials' release of the reports, the tabloid published both reports, as well as several salacious articles based on the reports' content. Because of the public's prior knowledge about the Duggar family, the non-redacted details—i.e., the parents' names, the victims' ages and address—allowed readers to ascertain the appellees' exact identities. While the pre-disclosure March 19 article indicated that some of the many Duggar children had been abused, the March 20 and 21 reports confirmed these rumors and enabled the appellees to be specifically identified. A torrent of media attention followed, and the appellees claim they "were subjected to spiteful and harsh comments and harassment on the Internet and in their daily lives." Compl. at 20, ¶ 68. Joy Duggar subsequently filed a motion in state court to expunge copies of the City report from the public record; the court granted this motion on the basis that Arkansas law had prohibited their release. Nonetheless, copies of the report continued to circulate online.

The appellees then brought this suit in federal court, alleging the officials violated their constitutional and common law rights by directing the reports' release.

They sued under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act (ACRA) for violations of their right to privacy and under Arkansas tort law for invasion of privacy—public disclosure of private fact; invasion of privacy—intrusion upon seclusion; and outrage.[2] The officials moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, invoking the protection of qualified immunity for the constitutional claims and qualified and statutory immunity for the tort claims. With regard to the constitutional claims, they argued the appellees had not alleged constitutional violations, or, in the alternative, that the constitutional right at issue—i.e., the right to informational privacy—was not "clearly established." The officials renew this argument on appeal, with an emphasis on the "clearly established" element. With regard to the state law claims, they argued that Ark. Code Ann. § 21-9-301 immunized them from suit and likewise renew this argument on appeal.

## II. *Discussion*

### A. *Constitutional Claims*

"A denial of qualified immunity is an appealable final decision only to the extent it turns on an issue of law. . . . At this early stage of the litigation, to warrant reversal, defendants must show that they are entitled to qualified immunity on the face of the complaint." *Dadd v. Anoka Cty.*, 827 F.3d 749, 754 (8th Cir. 2016) (internal quotations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (internal quotations omitted). "Like the district court, we must review the complaint most favorably to the non-moving party and may dismiss only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Alexander v. Peffer*, 993 F.2d 1348, 1349 (8th Cir. 1993) (internal quotations omitted).

_____

[2]The appellees also sued other parties who have since been dismissed and who are not subject to this appeal.

"The obvious function of the qualified immunity rule is to excuse an officer who makes a reasonable mistake in the exercise of his official duties." *Edwards v. Baer*, 863 F.2d 606, 607 (8th Cir. 1988). "An individual defendant is entitled to qualified immunity if his conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018). This court "review[s] de novo the denial of a motion to dismiss on the basis of qualified immunity, and must consider whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction." *Dadd*, 827 F.3d at 754–55 (internal quotations omitted). Absent either a clearly established right or a constitutional violation, qualified immunity applies. *See Estate of Walker*, 881 F.3d at 1060. We apply the same standard to claims under the Arkansas Constitution. *See Hudson v. Norris*, 227 F.3d 1047, 1054 (8th Cir. 2000) (citing *Robinson v. Langdon*, 970 S.W.2d 292, 296 (Ark. 1998)).

### 1. *Constitutional Violation*

"In *Whalen v. Roe*, 429 U.S. 589, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977) (*Whalen*), the Supreme Court determined that one component of the protection of the right to privacy embodied in the [F]ourteenth [A]mendment is an individual's interest in avoiding disclosures of personal matters." *Peffer*, 993 F.2d at 1349. We have adopted that understanding of the Fourteenth Amendment, recognizing a "right to confidentiality" protecting "against public dissemination of information" concerning "highly personal matters representing the most intimate aspects of human affairs." *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996) (internal quotation omitted).

> To violate a person's constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation of her to further some specific state interest, or a flagrant breach of a pledge of confidentiality which was instrumental in obtaining the personal information. To determine whether a particular disclosure satisfies this exacting standard, we must examine the nature

of the material opened to public view to assess whether the person had a legitimate expectation that the information would remain confidential while in the state's possession. When the information is inherently private, it is entitled to protection.[3]

*Id*. (cleaned up).

Because of the "limited" nature of the right, we have repeatedly declined to deny officials qualified immunity for disclosures involving anything short of "the most intimate aspects of human affairs." *Wade v. Goodwin*, 843 F.2d 1150, 1153 (8th Cir. 1988) (upholding finding of qualified immunity where state official identified plaintiff as a "survivalist"); *Peffer*, 993 F.2d at 1351 (finding plaintiff had not alleged a constitutional violation where city official revealed plaintiff had been rejected from the police academy); *Cooksey v. Boyer*, 289 F.3d 513, 516 (8th Cir. 2002) (affirming qualified immunity finding where mayor revealed police chief was being treated for stress). We have also declined to deny an official qualified immunity where the information disclosed was not "inherently private." *Eagle*, 88 F.3d at 625 (reversing denial of qualified immunity where officers publicized information already in the public domain); *see also Riley v. St. Louis Cty. of Mo.*, 153 F.3d 627, 631 (8th Cir.

---

[3]O'Kelley and Cate claim the constitutional violation prong of this case is controlled by *Hart v. City of Little Rock*, 432 F.3d 801 (8th Cir. 2005) rather than our informational privacy precedent; they urge us to adopt standards applied therein. In *Hart*, police officers sued Little Rock for releasing files containing their addresses, social security numbers, and other sensitive information to a defense attorney, who then released those files to his incarcerated client; the officers claimed the city had endangered them by releasing their personal information to a criminal. *Id.* at 803. We analyzed the case under a "state-created danger theory," because "the state owes a duty to protect individuals if it created the danger to which the individuals are subjected." *Id.* at 805. The instant case does not involve a state-created danger; therefore, *Hart* is not the applicable precedent. *Hart* is further distinguishable in that much of the information at issue in *Hart*—such as addresses and names of family members—was not inherently private.

1998) (affirming qualified immunity finding where officers released photographs of the deceased where the deceased's mother had allowed his remains to be viewed during a visitation).

The officials suggest that because we have declined to find constitutional violations in our previous informational privacy cases, we must also decline to find a violation here. We disagree. We have repeatedly recognized the existence of a right to confidentiality since the Supreme Court's pronouncement in *Whalen*. Just as we have recognized informational privacy's limits by denying its application in less-than-egregious cases, we have also defined its reach by describing the types of cases in which the right *would* proscribe official behavior. *See Goodwin*, 843 F.2d at 1153 (noting that the Constitution protects "privacy" in the context of "the most intimate aspects of human affairs"); *Peffer*, 993 F.2d at 1350 (finding right to privacy protects information that would constitute "a shocking degradation or an egregious humiliation . . . to further some specific state interest, or a flagrant breech of a pledge of confidentiality which was instrumental in obtaining the personal information"); *Eagle*, 88 F.3d at 625 (explaining that "inherently private" information is protected). Though we have explained that "protection against public dissemination of information is limited," that qualifier applies to information that is not "highly personal," does not "represent[] the most intimate aspects of human affairs," and is not "inherently private." *Eagle*, 88 F.3d at 625 (internal quotations omitted). The limitation does not swallow the right.

Government officials are entitled to protection from liability for innocuous disclosures, but we will uphold genuine constitutional limits on governmental disclosure in the appropriate circumstance. Being identified as a minor victim of sexual abuse is markedly more intrusive than being identified as a survivalist, failed police academy applicant, or over-stressed police chief. Releasing already-public information—particularly information made available by the plaintiff herself, as in

*Riley*—is also vastly different than disclosing information that the plaintiffs themselves jealously guarded from the public.[4]

Guided by the considerations detailed in *Peffer*, *Eagle*, and *Cooksey*, we hold that the appellees have alleged a plausible claim for the violation of a constitutional right. The appellees allege City and County law enforcement obtained information about Josh's abuse from the appellees and their family, promising them confidentiality. They allege the officials then released those law enforcement reports to the public. They allege they were minors at the time of the molestation and at the time the reports were created. They allege the reports contained graphic details of their incestuous sexual abuse. And, they allege the reports were insufficiently redacted, de facto revealing their names to the public. Finally, they allege the officials released the reports in an effort to promote the appearance of transparency. Therefore, the appellees have pleaded sufficient facts to meet *Peffer*'s "exacting standard." *See Eagle*, 88 F.3d at 625.

The information released by the officials involved "highly personal matters representing the most intimate aspect of human affair," *Eagle*, 88 F.3d at 625 (internal quotation removed), and the appellees had a legitimate expectation of privacy in that information. Not only did police promise the appellees that the

---

[4]Hoyt submitted separate briefing and argues he could not have violated the appellees' right to confidentiality because he released his report after the City, meaning the information at issue was already public. However, at this stage of the litigation, "we must review the complaint most favorably to the non-moving party." *Peffer*, 993 F.2d at 1349. The appellees allege that the County report revealed information not contained in City report, and we take those allegations as true. We also hesitate to announce a rule that would allow multiple officials to violate a person's rights near-simultaneously but would only punish the "first-mover." We need not resolve this "first-in-time" issue here, however, because the appellees have alleged separate violations.

information would remain private, but Arkansas law also supported this expectation of privacy.[5] In sum, the information was inherently private and is therefore entitled

[5]The Arkansas Code provides that

[a] law enforcement agency shall not disclose to the public information directly or indirectly identifying the victim of a sex offense except to the extent that disclosure is:

(1) Of the site of the sex offense;

(2) Required by law;

(3) Necessary for law enforcement purposes; or

(4) Permitted by the court for good cause.

Ark. Code Ann. § 16-90-1104(b).

Section 16-90-1104(b)(2) includes an exception for disclosures required by law, but the exception is clarified by Arkansas's Child Maltreatment Act, which states that

[a]ny data, records, reports, or documents that are created, collected, or compiled by or on behalf of the Department of Human Services, the Department of Arkansas State Police, or other entity authorized under this chapter to perform investigations or provide services to children, individuals, or families shall not be subject to disclosure under the Freedom of Information Act of 1967, § 25-19-101 et seq.

Ark. Code Ann. § 12-18-104(a).

The City and County's reports were "documents" "created, collected, or compiled" by "entit[ies] authorized . . . to perform investigations or provide services to children, individuals, or families" as defined by the Act. *See id.* The County prosecutor's filing of a FINS petition in response to a City police request also

to constitutional protection. The appellees have stated a plausible claim for the violation of their constitutional right to confidentiality.

## 2. *Clearly Established*

The "clearly established" analysis "focus[es] . . . on whether the officer had fair notice that her conduct was unlawful . . . at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). "The right the official is alleged to have violated

---

supports the status of the reports as documents to which the Child Maltreatment Act exception applies.

The interplay between the two statutes is readily discernible from their plain language. The absence of Arkansas cases actually applying the Child Maltreatment Act does not render its plain language ambiguous. None of the officials have denied that the reports were documents; that these documents were created; that they were collected or compiled by their respective law enforcement agencies; or that their agencies were authorized to investigate the allegations against Josh. As FOIA officers, the officials should reasonably have been aware of the law's requirements.

Neither is the officials' attempt to create ambiguity by referencing a change to the Juvenile Code availing. The Juvenile Code is an entirely different section of the Arkansas Code than that containing § 16-90-1104 and the Child Maltreatment Act. *See* Act of Apr. 4, 2017, No. 891, 2017 Ark. Acts 891 (amending § 9-27-309(j). The legislature amended the Juvenile Code to exempt from FOIA records of an investigation conducted when the *offender* was an adult but relating to juvenile conduct. This change does tangentially relate to the situation at issue, in that Josh Duggar was investigated as an adult for juvenile conduct. However, Josh is not a plaintiff in this suit: his sisters are. The issue here is not whether the appellants acted improperly vis a vis Josh; the issue is whether they acted improperly vis a vis his sisters. Perhaps the Arkansas legislature did amend the code to protect juvenile perpetrators like Josh. But that amendment did nothing to change the language or rationale of § 16-90-1104 or of the Child Maltreatment Act, which are intended to protect victims rather than perpetrators.

-11-

must have been clearly established in a particularized sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Capps v. Olson*, 780 F.3d 879, 885–86 (8th Cir. 2015) (cleaned up).

The contours of a right may be sufficiently clear without "a case directly on point." *Kisela*, 138 S. Ct. at 1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)). Though we are "not to define clearly established law at a high level of generality," *id.* (internal quotations omitted), "[g]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question," *Olson*, 780 F.3d at 886 *(*quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)); *see also White*, 137 S. Ct. at 552 ("Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers, but in the light of pre-existing law the unlawfulness must be apparent." (cleaned up)). "[I]n an obvious case, [general] standards can clearly establish the answer, even without a body of relevant case law." *Olson*, 780 F.3d at 886 (alterations in original) (quoting *Brosseau*, 543 U.S. at 199).

The question now before us, then, is whether our law was "clearly established in a particularized sense," that the officials' alleged conduct was unconstitutional. *Olson*, 780 F.3d at 885–86 (cleaned up). Namely, we must decide whether the law provided fair notice to the appellants that releasing details of minors' sexual abuse to a tabloid in a format predictably enabling the victims' identification was not only unadvisable, but also unlawful.

We conclude that it did. Inexact boundaries are boundaries nonetheless. The particular facts alleged here are not near the periphery of the right to privacy but at its center. Certainly, allegations of incestuous sexual abuse implicate "the most

intimate aspects of human affairs" and are "inherently private." *Eagle*, 88 F.3d at 625 (internal quotations omitted). The content and circumstances of these disclosures do not just meet the standard of "shockingly degrading or egregiously humiliating," they illustrate them. *Cooksey*, 289 F.3d at 516. And releasing insufficiently redacted reports detailing minors' sexual abuse to a tabloid, notwithstanding promises that these reports would remain private, is "a flagrant breach of a pledge of confidentiality." *Id.* (cleaned up). Despite not having had an informational privacy case with these same facts, our case law "appl[ies] with obvious clarity to the specific conduct in question," *Olson*, 780 F.3d at 886 (quoting *Lanier*, 520 U.S. at 271), and the appellants' arguments to the contrary are unavailing. This is a case in which "[general] standards . . . clearly establish[ed] the answer." *Id.* (first alteration in original) (quoting *Brosseau*, 543 U.S. at 199).[6]

"[Q]ualified immunity protects officials who make bad guesses in gray areas, [and] it gives them breathing room to make reasonable but mistaken judgments." *Estate of Walker*, 881 F.3d at 1060 (internal citations omitted). Qualified immunity does not, however, protect unreasonable mistakes or plain incompetence. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (explaining that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Where, as here, we are not reviewing split-second, life-or-death decisions characteristic of excessive force cases, the range of reasonable judgments naturally narrows by virtue of the officials' increased opportunity for reasoned reflection. *See Brown v. City of Golden*

---

[6]Arkansas law further undercuts the appellants' claim that they lacked fair notice of their alleged conduct's illegality. Statutes do not create constitutional rights, *Davis v . Scherer*, 468 U.S. 183 (1998), but they may assist in showing that those rights are clearly established by helping provide fair notice of a particular course of conduct's unlawfulness. *See Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) ("[S]tate statutes and regulations may inform our judg[]ment regarding the scope of constitutional rights . . . ."); *c.f. Small v. McCrystal*, 708 F.3d 997, 1004–05 (8th Cir. 2013). Arkansas disclosure law is especially relevant here since the officials have argued that the law, in fact, required them to disclose the reports.

*Valley*, 574 F.3d 491, 497 (8th Cir. 2009) (noting the fact that "there [was] nothing to indicate that [the officer] was faced with the need to make any split-second decisions" as contributing to the court's denial of qualified immunity); *see generally Awnings v. Fullerton*, 912 F.3d 1089, 1100 (8th Cir. 2019) (undertaking qualified immunity analysis in light of the "facts and circumstances confronting" the official in question).

We hold that the right of minor victims of sexual abuse not to have their identities and the details of their abuse revealed to the public was clearly established.

B. *State Law Claims*

Generally, we will only decide state law claims on interlocutory appeal if those claims are "inextricably intertwined with interlocutory appeals concerning the defense of qualified immunity." *Veneklase v. City of Fargo*, 78 F.3d 1264, 1269 (8th Cir. 1996) (internal quotation omitted). However, we will also review state law claims for the limited purpose of determining whether the district court properly denied a state entity or its agent immunity from suit, "because immunity is effectively lost if a case is erroneously permitted to go to trial." *Argonaut Great Cent. Ins. Co. v. Audrain Cty. Joint Commc'ns*, 781 F.3d 925, 929 (8th Cir. 2015) (quoting *Van Wyhe v. Reisch*, 581 F.3d 639, 647–48 (8th Cir. 2009)); *see also id.* ("The key to our jurisdiction over an interlocutory appeal addressing sovereign immunity is whether the immunity is an immunity from suit rather than a mere defense to liability." (internal quotation omitted)).

Ark. Code Ann. § 21-9-301 immunizes all political subdivisions of the state "from liability and from suit for damages except to the extent that they may be covered by liability insurance" and states that "[n]o tort action shall lie against any such political subdivision because of the acts of its agents and employees." The Arkansas Supreme Court has held and repeatedly reaffirmed that § 21-9-301 provides public officials with immunity against negligent acts but *not* against intentional torts.

-14-

*See Sullivan v. Coney*, 427 S.W.3d 682, 685 (2013). The district court concluded that because the appellees had alleged intentional torts, § 21-9-301 did not apply.

Though the officials argue that the district court "erroneously interpreted Arkansas state law" because "[t]he decision in *Battle* is wrong," Appellants O'Kelley's and Cate's Br. at 31, 33, their argument is without merit, as federal courts are bound by a state supreme court's interpretation of state law. *See Curtis Lumber Co., Inc. v. Louisiana Pac. Corp.*, 618 F.3d 762, 771 (8th Cir. 2010).

Arkansas defines intentional torts as those "involv[ing] consequences which the actor believes are substantially certain to follow his actions." *Stewart Title Guar. Co. v. Am. Abstract & Title Co.*, 215 S.W.3d 596, 606 (Ark. 2005) (citing *Miller v. Ensco, Inc.*, 692 S.W.2d 615, 617 (Ark. 1985)). The appellees allege that the officials committed the intentional torts of invasion of privacy—public disclosure of private fact; invasion of privacy—intrusion upon seclusion; and outrage. According to Arkansas law, these torts involve the release of either (1) offensive information in which the plaintiff has a reasonable expectation of privacy, *see Dunlap v. McCarthy*, 678 S.W.2d 361, 364 (1984) (citing Restatement (Second) of Torts § 652 et seq. (1977)), or (2) information likely to cause the plaintiff emotional distress. *See Crockett v. Essex*, 19 S.W.3d 585, 589 (Ark. 2000). Read in the light most favorable to the appellees, the complaint alleges that the officials released the reports with either the affirmative knowledge or the substantial certainty that the information contained therein was private and that its release would be offensive or distressing to the appellees. Therefore, because the appellees have sufficiently pleaded intentional torts, the officials are not entitled to statutory or qualified immunity on the appellees' state law claims at this stage of the proceedings.

### III. *Conclusion*

The judgment of the district court is affirmed.

———————————————