**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

N.E.L.; M.M.A.; E.M.M.,

     Plaintiffs - Appellants,

v.

MONICA GILDNER; ANGELA WEBB;
TINA ABNEY,

     Defendants - Appellees.

No. 18-3059
(D.C. No. 2:17-CV-02155-CM-JPO)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BACHARACH**, **PHILLIPS**, and **EID**, Circuit Judges.

_____

Kansas child-and-family-services employees obtained an ex parte order from a

Kansas state court to take ten minor children, including plaintiffs, into immediate

physical custody. They then arranged with Colorado authorities to execute the

Kansas custody order in Colorado, where the children were temporarily located.

Plaintiffs N.E.L. and M.M.A. later sued both Kansas and Colorado officials under

42 U.S.C. § 1983 in the United States District Court for the District of Colorado.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The District of Colorado determined it lacked personal jurisdiction over the Kansas defendants and transferred the case against them to the United States District Court for the District of Kansas. The District of Kansas denied a motion to re-transfer the case to the District of Colorado, granted the defendants qualified immunity, and dismissed the case. Plaintiffs appeal the dismissal and the denial of their motion to re-transfer to Colorado. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

In a related appeal, we affirmed the District of Colorado's order dismissing the plaintiffs' first amended complaint against the Colorado defendants. *N.E.L. v. Douglas Cty.*, 740 F. App'x 920, 922-27, 934 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1320 (2019) (*N.E.L. I*). After those defendants were dismissed and the action against the Kansas defendants was transferred to the District of Kansas, plaintiffs filed their operative second amended complaint (SAC). The SAC added an additional plaintiff (E.M.M.) and two additional claims.

We detailed plaintiffs' factual allegations at length in *N.E.L. I*. *See id.* at 922-26. We need not repeat that discussion here. Essentially, plaintiffs contend that the defendants obtained ex parte orders of protective custody from a Kansas court based on omissions and misrepresentations, then acted in concert with the Colorado defendants in wrongfully executing the orders, resulting in plaintiffs' removal from Jane Doe's custody and their temporary placement in state custody.

The SAC includes claims for unlawful seizure in violation of the Fourth Amendment, unlawful detention in violation of the Fourth Amendment, deprivation of familial association in violation of the Fourteenth Amendment, conspiracy to deprive plaintiffs of their constitutional rights, exemplary damages, deprivation of the right to travel, and malicious prosecution and/or abuse of process. The district court granted the defendants qualified immunity on all claims.

"A motion to dismiss based on qualified immunity imposes the burden on the plaintiff to show both that [1] a constitutional violation occurred and [2] that the constitutional right was clearly established at the time of the alleged violation." *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir.), *cert. denied*, 2019 WL 1116409 (U.S. May 20, 2019) (No. 18-1173) (internal quotation marks omitted). In deciding the qualified immunity question the district court considered not only the allegations of the SAC but also documents the defendants provided in support of their motion to dismiss. It determined the uncontested facts in these documents showed that "[m]ost of the claimed 'misrepresentations and omissions' set forth in [the SAC] are refuted . . . or are not material." Jt. App., Vol. II at 206. The district court concluded based on the uncontested factual allegations in the Child in Need of Care (CINC) petitions "combined with the parents' post-petition conduct, it would be reasonable for an official to believe an ex parte order of protective custody was justified." *Id.* at 207.

On appeal, the plaintiffs argue that (1) the district court construed their complaint too narrowly and failed to address the defendants' actions taken in conspiracy with the Colorado defendants to unlawfully execute the ex parte orders;

3

(2) the district court erred in deferring to the defendants' judgment; and (3) clearly established law prohibited the Kansas defendants from seizing plaintiffs from a private home without a warrant, a valid court order, exigent circumstances, or consent. They also argue the district court clearly erred by failing to re-transfer their case to the District of Colorado.

## DISCUSSION

### 1. Grant of Qualified Immunity

"We review de novo the grant of a motion to dismiss under Rule 12(b)(6) due to qualified immunity." *Doe*, 912 F.3d at 1288. "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Id.* (brackets and internal quotation marks omitted).

A clearly established right "should not be defined at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (internal quotation marks omitted). Instead, "the clearly established law must be particularized to the facts of the case." *Id.* (internal quotation marks omitted). Although plaintiffs need not cite "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (internal quotation marks omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation marks omitted).

4

## A. Execution of Ex Parte Orders

Plaintiffs argue the district court erred by discussing only the defendants' conduct in seeking the ex parte orders and ignoring plaintiffs' claims concerning the execution of those orders and their subsequent detention. We need not decide whether the district court failed to fully and individually discuss plaintiffs' execution- and detention-related claims, because we may affirm on any basis supported by the record, *see Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011), and we elect to do so here.

In *N.E.L. I*, we determined the Colorado defendants (a social worker and deputy sheriff) were entitled to qualified immunity in connection with plaintiffs' claims that they "failed to first register the ex parte Kansas order with a Colorado court as required by the Colorado UCCJEA, entered Dr. and Mrs. G's home without a warrant, and illegally seized [the children]," 740 F. App'x at 929; "relied on the facially invalid Kansas ex parte order to enter the home," *id.*; "deprived [N.E.L. and M.M.A.] of their Fourteenth Amendment right to familial association by requiring Mrs. Doe to leave Dr. and Mrs. G's home[,] by prohibiting N.E.L. and M.M.A. from leaving with Mrs. Doe[,] by prohibiting N.E.L. and M.M.A. from traveling with Mrs. Doe, Mr. Doe, and their grandparents[,] and by detaining N.E.L. and M.M.A. for the purpose of terminating Mr. and Mrs. Doe's parental rights," *id.* at 931; and conspired to violate N.E.L. and M.M.A.'s Fourth Amendment and Fourteenth Amendment rights, *see id.* at 931 n.22. We reasoned plaintiffs failed to show the alleged actions violated clearly established law. *See id.* at 929-31.

5

Likewise, the Kansas defendants are entitled to qualified immunity on plaintiffs' seizure and detention-related claims in this case, because plaintiffs have failed to present clearly established law that supports their Fourth and Fourteenth Amendment claims. For substantially the reasons stated in *N.E.L. I*, we affirm the dismissal on qualified-immunity grounds of plaintiffs' claims relating to the execution of the ex parte orders and plaintiffs' resulting detention.

## B. Lawfulness of CINC Petitions and Ex Parte Orders

Plaintiffs also attack the lawfulness of defendants' conduct in filing the CINC petitions and obtaining the ex parte orders. They contend defendants misrepresented or omitted facts to create the impression there was probable cause to believe that plaintiffs met the definition of "children in need of care" and were in immediate danger. *See* SAC ¶ 213, Jt. App., Vol. II at 49 (internal quotation marks omitted). "[G]overnment officials' procurement through distortion, misrepresentation and omission, of a court order to seize a child is a violation of the Fourth Amendment." *Malik v. Arapahoe Cty. Dep't of Soc. Servs.*, 191 F.3d 1306, 1316 (10th Cir. 1999) (citation and internal quotation marks omitted).[1]

---

[1] Plaintiffs argue the district court's conclusion that "it would be reasonable for an official to believe an ex parte order of protective custody was justified," Jt. App., Vol. II at 207, contradicts its earlier findings that (1) "the allegations in the [SAC]—that defendants sought the ex parte order[s] knowing there was no emergency and knowing they were omitting and misrepresenting relevant facts—[establish that they] violate[d] clearly established Tenth Circuit law," *id.* at 200, and (2) no travel restrictions prohibited plaintiffs' travel to Colorado. Assuming these district court findings are contradictory, we are not bound by them in conducting our de novo review. *Cf. Brokers' Choice of Am., Inc. v. NBC Universal,*

6

But plaintiffs must show the alleged omissions and misstatements were "so probative they would vitiate probable cause." *Id.* (internal quotation marks omitted). "[W]e measure probable cause by (1) removing any false information from the [document supporting a probable cause determination], (2) including any omitted material information, and then (3) inquiring whether the modified [document] establishes probable cause." *Patel v. Hall*, 849 F.3d 970, 982 (10th Cir. 2017) (addressing claim that arrest warrant included false information and/or omissions that vitiated probable cause); *cf. Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir. 1990) (discussing evaluation of probable cause in context of "judicial deception" claim involving social workers' investigation).

### (1)  Reliance on Matters Outside Complaint

As an initial matter, plaintiffs complain the district court improperly relied on matters outside the SAC without converting the motion to dismiss to a motion for summary judgment and without giving them notice and an opportunity to present evidence in opposition to the "summary judgment" motion. "Generally, a district court can consider . . . materials [outside a complaint] only by converting the motion to dismiss to a motion for summary judgment." *Lincoln v. Maketa*, 880 F.3d 533, 537 n.1 (10th Cir. 2018). But a district court may consider indisputably authentic documents that are central to the plaintiff's claim and referred to in the complaint

---

*Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) ("[W]e need not address . . . alleged errors regarding the district court's analytical tools because our review is de novo.").

without converting the motion to one for summary judgment. *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008). "We review for abuse of discretion a district court's refusal to convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).

Here, the district court considered the outside documents after concluding there was no dispute as to their authenticity, plaintiffs had referred to them in the SAC, and the facts in these documents were central to plaintiffs' claims. Plaintiffs fail to show it abused its discretion in doing so.

Plaintiffs argue that even if they conceded the *authenticity* of the outside documents, they did not agree that the records' *contents* were true. They accuse the district court of using the CINC petitions to refute the facts they specifically pled in the SAC. The district court noted that plaintiffs had raised no challenge to the underlying facts in the CINC petitions. Jt. App., Vol. II at 202 ("[W]hile plaintiffs allege the CINC petitions were not based on probable cause, they have not contested the facts in the CINC petitions."). Although plaintiffs now purport to dispute the underlying facts in the petitions, their generalized assertions about the source of defendants' knowledge of certain facts or the conclusions to be drawn from these facts fail to present any significant challenge to the specific underlying facts themselves.

## (2) Probable Cause

The factual challenges plaintiffs raise are insufficient to show that defendants sought the CINC petitions without probable cause, relying on known falsehoods and omissions, in violation of clearly established law. The facts as summarized by the district court provided probable cause for filing the CINC petitions. Plaintiffs' claims of misrepresentations or omissions are insufficient to demonstrate otherwise.

That brings us to the heart of plaintiffs' claim: that defendants lacked probable cause to believe that plaintiffs were in immediate danger when they sought ex parte orders. According to plaintiffs, the motion for the orders, filed by an assistant district attorney at defendants' behest, falsely stated to the court that an emergency existed because the family had fled the state of Kansas. In their opening brief, plaintiffs make six arguments why the motion and/or orders were not supported by probable cause, and were based on alleged false statements and omissions made to the issuing court: (1) a non-emergency hearing had been set on the CINC petitions, (2) the CINC petitions did not prohibit them from traveling, (3) defendants were aware of their precise location in Colorado, (4) defendants had no reason to believe they were in immediate physical danger, (5) the Does had not refused to participate in family preservation services, and (6) plaintiffs ultimately prevailed in the CINC proceeding when the judge found no probable cause to remove them from their parents. None of these challenges establishes that defendants proceeded without probable cause in violation of clearly established law.

9

First, the CINC court presumably was aware of its own docket and the fact that a non-emergency hearing had been set. The omission of that fact did not conceal a lack of probable cause.

Second, the failure to mention that the CINC petitions lacked travel restrictions was not a significant omission. The gist of the motions was that the Does had left the state soon after the initiation of CINC proceedings and shortly before a scheduled hearing. This timing-related concern remained valid regardless of whether the plaintiffs were subject to express travel restrictions.

Third, the CINC filings did not state that the children's whereabouts were unknown. In fact, the motion for ex parte orders acknowledged that the Does' food stamp card was used in Littleton, Colorado on May 2, 2009. This is consistent with the representation in the SAC that the defendants "had information that the Doe family was in Littleton, Colorado as of May 2, 2009." Jt. App., Vol. II at 28 ¶ 99.

We note the SAC further alleges that when they sought the ex parte orders, defendants knew the "precise" address where the children were located. *Id.* at 29-30 ¶ 108. Given this alleged fact, defendants' representation in the motion that they merely knew locations where the Doe family's food stamp card had been used in Colorado may seem disingenuous. But disingenuousness is not enough. We must ask whether inclusion of the precise address where the plaintiffs were staying would have vitiated probable cause. Again, the core concern was that the children had been

removed from the state after the initiation of CINC proceedings and shortly before a scheduled hearing, not whether their precise location was known.[2]

Fourth, although defendants may not have had a basis to be concerned about plaintiffs' physical safety, for the reasons we have stated they did have a concern about their mental well-being. This concern formed the basis for the underlying petitions and the asserted emergency.

Fifth, the motion requesting ex parte orders asserted that family preservation services had been offered and that John Doe indicated he was willing to participate in the services. The motion did not state that the Does had rejected such services. To the extent the ex parte orders could have created a misleading impression by stating only that such services had been offered, without disclosing Mr. Doe's willingness to accept them, this did not vitiate probable cause. The court found *both* that reasonable efforts had been made to avoid removal of the children from their home, *and* that such reasonable efforts were not required because an emergency existed. Mr. Doe's willingness to participate in family preservation services arguably affected only the non-emergency-based rationale.

---

[2] The ex parte orders themselves go further, affirmatively stating that the children's whereabouts are unknown. But it is unclear that statement can be attributed to the defendants. The SAC merely asserts, on information and belief, that the defendants "participated in intentionally crafting the language of the *Ex Parte Orders*." Jt. App., Vol. II at 30 ¶ 112. An allegation on information and belief that defendants participated in some unspecified way in drafting a court order that purportedly contained an inaccuracy falls short of plausibly asserting a basis for liability. *Cf. Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989) (fraud on the court must be pled with particularity).

11

Sixth, the fact that plaintiffs ultimately prevailed in state-court proceedings does not mean that defendants' alleged misrepresentations and omissions violated clearly established law. For the reasons we have stated, plaintiffs fail to show such a violation.

Whether we would have concluded that an emergency existed under the facts alleged if the question were presented to us in the first instance is not the issue. Rather, it is whether the defendants, in making the alleged misrepresentations and omissions, violated clearly established law by knowingly presenting the need for emergency seizure and detention without probable cause. They did not. The district court therefore properly granted qualified immunity concerning this claim.

### 2. Denial of Motion to Re-Transfer

In the prior appeal we noted plaintiffs had failed to appeal the transfer of their claims against the Kansas defendants to the District of Kansas. *N.E.L. I*, 740 F. App'x at 927. In its order denying their motion to re-transfer, the district court concluded, based on the prior decision, that it was constrained by the "law of the case" doctrine. Jt. App., Vol. II at 183 (internal quotation marks omitted). It determined plaintiffs failed to assert any good reason for departing from that doctrine. *See id.* at 184.

The law of the case doctrine does not deprive a transferee court of its power to correct an erroneous transfer decision. *F.D.I.C. v. McGlamery*, 74 F.3d 218, 221 (10th Cir. 1996). A litigant dissatisfied with the transfer decision may still "bring[] a motion to retransfer in the transferee court." *Id.* at 222. But the prior transfer

12

decision of a coordinate court should only be revisited in extraordinary circumstances, "such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (internal quotation marks omitted).

The district court determined that plaintiffs failed to demonstrate clear error. It noted the District of Colorado's rationale that all the defendants' conduct took place in Kansas with the goal of returning the children to Kansas, and that any contacts with defendants in Colorado were too slight to overcome the fact that most of the conduct plaintiffs complain of occurred in Kansas. Plaintiffs advance several arguments in opposition to this conclusion, *see* Jt. Opening Br. at 23-29, centered on the allegedly unlawful seizure and/or deprivations they contend took place in Colorado. But the District of Colorado granted qualified immunity to the Colorado defendants concerning those claims. For substantially the same reasons cited by the District of Colorado, we have determined the District of Kansas properly granted qualified immunity to the Kansas defendants. Thus, plaintiffs cannot show they had any likelihood of a different result had they been permitted to pursue their claims in the District of Colorado rather than the District of Kansas, and any error in the transfer decision was therefore harmless.

## CONCLUSION

We affirm the district court's orders dismissing the case and denying plaintiffs' motion for re-transfer to Colorado. We grant plaintiffs' unopposed motion to seal the CINC records contained in Volume III of the Appendix.

Entered for the Court


Gregory A. Phillips
Circuit Judge