[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12778
_____

D.C. Docket No. 2:16-cv-00196-MHH

MONTAGUE MINNIFIELD,

Plaintiff - Appellee,

versus

CITY OF BIRMINGHAM DEPARTMENT OF POLICE, et al.,

Defendants,

HEATH BOACKLE,
in his official and individual Capacity,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(October 30, 2019)

Before MARCUS, JULIE CARNES and KELLY,[*] Circuit Judges.

PER CURIAM:

Defendant-Appellant Sergeant Heath Boackle, a supervisor in the Birmingham Police Department ("BPD") K-9 unit, appeals from the denial of qualified immunity. Plaintiff-Appellee, Officer Montague Minnifield, an African-American male, claims that he was not transferred to a K-9 patrol position because of his race and in retaliation for filing complaints of discrimination. He faults Sergeant Boackle for not recommending him and recommending white officers for the position instead. We have jurisdiction to consider the denial of qualified immunity to the extent that resolution turns on issues of law, rather than evidentiary sufficiency. Johnson v. Jones, 515 U.S. 304, 317 (1995). Because the law did not clearly establish that an adverse employment action included a failure to recommend an applicant for a position that paid the same and offered no materially improved work conditions (other than prestige), we reverse.

# I

Officer Minnifield joined the BPD in 1997 as a police officer. In 2009, he applied to transfer to the Tactical Unit, which comprises specialized units including motorscouts, patrol K-9, and airport K-9 teams. Officer Minnifield's

---

[*] Honorable Paul J. Kelly, Jr., United States Circuit Judge for the Tenth Circuit, sitting by designation.

application was initially denied, but he was later transferred after he filed a grievance with the Jefferson County Personnel Board.  Officer Minnifield indicated his preference for a K-9 or motorscout position, but was assigned to the Freeway Unit.  After further dispute and another complaint, Officer Minnifield succeeded in becoming a motorscout, which entitled him to a 5% pay increase.

In 2012 and 2013, the BPD posted K-9 vacancies and Officer Minnifield applied.   Sergeant Boackle sent BPD Chief Roper a memo recommending five officers, not including Officer Minnifield, for the open patrol K-9 position.  All of the officers recommended were white, as were the ones selected.

Officer Minnifield filed an EEOC charge based upon Sergeant Boackle's failure to recommend him to Chief Roper for the 2013 patrol K-9 vacancy.  In 2014, Officer Minnifield sustained injuries in a motorcycle accident that limited him to performing administrative duties until he retired in 2015.  Later that year, the EEOC sent Officer Minnifield a right-to-sue letter on his 2013 claims.[1]

Officer Minnifield sued the City of Birmingham under a variety of statutes including 42 U.S.C. § 1981, Title VII, and 42 U.S.C. § 1983, including Sergeant Boackle in a § 1983 claim.  The Defendants moved for summary judgment, which the district court granted in part and denied in part.  Minnifield v. City of

---

[1]  42 U.S.C. § 1981 does not require claimants to go through the EEOC administrative process as a prerequisite of suit.  Officer Minnifield brought his § 1981 claim together with Title VII claims that did require him to take this administrative step.

Birmingham, 325 F.R.D. 450, 471 (N.D. Ala. 2018).  In pertinent part, the district court denied summary judgment on "the § 1983 claims for disparate treatment and retaliation in violation of § 1981 against [Sergeant] Boackle in his individual capacity, to the extent the claims are based on the failure to promote Officer Minnifield to a 2013 Patrol K–9 position."  Id.  Defendants then moved to alter or amend the judgment, Fed. R. Civ. P. 59(e), contending that the district court overlooked Sergeant Boackle's qualified immunity defense.

In response, the district court denied qualified immunity.  The district court held that Officer Minnifield had a clearly established right to be free of retaliation and racial discrimination at work, that Sergeant Boackle's actions violated that right, and that a reasonable officer in Sergeant Boackle's position would have known it.  III Aplt. App. 170–171.  On appeal, Sergeant Boackle argues that he is entitled to qualified immunity because he acted within his discretionary authority and no clearly established law provided that (1) he could be held liable when he was not Officer Minnifield's employer or supervisor, (2) his failure to recommend constituted an adverse employment action, or (3) that his actions could be construed as the but-for cause of retaliation.

**II**

Because a qualified immunity inquiry presents a "pure question of law," we review de novo a district court's denial of summary judgment based on qualified

4

immunity and view the evidence in a light most favorable to the non-movant. Elder v. Holloway, 510 U.S. 510, 516 (1994); Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006).  Ordinarily, we take the facts the district court assumed as given.  See Johnson, 515 U.S. at 319.

Qualified immunity protects government officials performing discretionary functions so long as an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The purpose of qualified immunity is to protect public officials "from undue interference with their duties and from potentially disabling threats of liability."  Holloway, 510 U.S. at 514 (quoting Harlow, 457 U.S. at 806). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

A defendant claiming qualified immunity must show that he acted "within the scope of his discretionary authority when the allegedly wrongful acts occurred."  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991)).  If that showing is made, then the question becomes whether plaintiff's allegations, taken as true, establish that the conduct (1) violated a constitutional or statutory right that (2) was clearly established by law.  Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir.

5

2010) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).  Courts may approach these elements in either order, though it may be beneficial to analyze them in sequence.  <u>Pearson</u>, 555 U.S. at 236–37.  At the same time, it is not necessary to decide both where it is plain that the law is not clearly established.  <u>Id.</u>

Whether a defendant was acting within his or her discretionary authority depends on whether the official was "(a) performing a legitimate job-related function. . . (b) through means that were within his power to utilize" at the time the conduct occurred.  <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1265 (11th Cir. 2004).  The question is not whether it was within the defendant's authority to commit an allegedly unconstitutional or unlawful act.  <u>See</u> <u>Harbert Int'l Inc. v. James</u>, 157 F.3d 1271, 1282 (11th Cir. 1998).  Instead, we ask whether the conduct served a proper purpose and "would be within, or reasonably related to, the outer perimeter of an official's discretionary duties."  <u>Id.</u> (quoting <u>In re Allen</u>, 106 F.3d 582, 594 (4th Cir. 1997).  Once this is established, the burden shifts to the plaintiff to "show that qualified immunity is not appropriate."  <u>Lee</u>, 284 F.3d at 1194.

To defeat qualified immunity, a plaintiff must show that the conduct in question violates clearly established law.  <u>Kisela v. Hughes</u>, 584 U.S. __, __, 138 S. Ct. 1148, 1152 (2018).  A plaintiff need not identify a case directly on point, but "existing precedent must have placed the statutory or constitutional question

6

beyond debate." White v. Pauly, 580 U.S. __, __, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting Mullenix v. Luna, 577 U.S. __, __, 136 S. Ct. 305, 308 (2015)). Clearly established law must not be identified with a "high level of generality." Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011). General legal propositions are not enough. Doe v. Braddy, 673 F.3d 1313, 1318 (11th Cir. 2012). Rather, the clearly established law must be "particularized" to the facts of the case. White, 580 U.S. at __, 137 S. Ct. at 552. In this way, the test focuses "on whether the officer had fair notice that [his] conduct was unlawful." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam). "[P]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated reasonable government agent that what defendant is doing violates federal law in the circumstances." Gonzalez v. Lee Cty. Hous. Auth., 161 F.3d 1290, 1295 (11th Cir. 1998) (emphasis in original) (quoting Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 823 (11th Cir. 1997) (en banc)). This standard does not require that the "very action in question has previously been held unlawful," but "the unlawfulness must be apparent" under then-existing law. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Officer Minnifield's claim against Sergeant Boackle arises under 42 U.S.C. § 1981, which prohibits racial discrimination and retaliation in employment. The test for disparate treatment under that section, as enforced through 42 U.S.C. §

7

1983, is the same as that used in Title VII cases. Lewis v. City of Union City, 934 F.3d 1169, 1185 (11th Cir. 2019). Both disparate treatment and retaliation require a plaintiff to show an adverse employment action as part of his prima facie case. Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1191–92 (11th Cir. 2016). "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)), overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). For disparate treatment, an adverse employment action must "impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001), overruled on other grounds by Burlington, 548 U.S. 53. Proof of "direct economic consequences" is not required, but a plaintiff must show "a serious and material change in the terms, conditions, or privileges of employment." Id. (emphasis in original). Retaliation claims have a relaxed standard requiring only a showing of a materially adverse action that "might [] dissuade[] a reasonable

8

worker from making or supporting a charge of discrimination." Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008) (quoting Burlington, 548 U.S. at 68).

## III

Sergeant Boackle was acting within the scope of his discretionary authority when he recommended officers for a vacant position within BPD. At the time he made those recommendations, the law was not clearly established that failure to recommend an employee for a lateral transfer to a position with the same pay constitutes an adverse employment action under 42 U.S.C. § 1981.

## A

As an initial matter, the parties appear to disagree about some aspects of the K-9 positions. These issues prove immaterial, since even assuming their resolution in Officer Minnifield's favor does not change the conclusion that Sergeant Boackle is entitled to qualified immunity. First, the parties dispute whether patrol K-9 officers received a 5% increase in pay. Sergeant Boackle initially admitted that "K-9 patrol positions resulted in a 5% increase in wages." Amended Complaint ¶ 21, I Aplt. App. 29; Answer of Defendant Heath Boackle ¶ 21, I Aplt. App. 67. However, in later pleadings and at oral argument, Sergeant Boackle maintained that the 5% increase is in fact not available to patrol K-9 units. Defendants' Brief in Support of their Motion for Summary Judgment ¶ 18, I Aplt. App. 94 ("The 5% (percent) pay increase is not available to patrol dog handlers."); Oral Argument at

4:24 ("Kelly, J.: Did [the patrol K-9 position] pay less [than the motorscout position]? Counsel for Sergeant Boackle: That is the evidence your honor, yes it is."). We will assume that patrol K-9 positions did receive this increase. See Holloway, 510 U.S. at 516. The parties do not dispute motorscouts also received this increase. Thus, Officer Minnifield was "topped out" on the officer pay scale and already receiving a 5% increase as a motorscout. Therefore, his pay would have remained the same had he obtained a K-9 position. There is no evidence that Officer Minnifield was denied an increase in pay because he did not receive either a patrol or airport K-9 position. Our analysis therefore proceeds under the assumption that Officer Minnifield was denied a recommendation for a position that received the same pay as his motorscout position.

The parties also dispute whether patrol K-9 positions were more prestigious than motorscout positions. The record is not entirely clear on this point. Be that as it may, we assume that patrol K-9 positions were, in some measure, more prestigious than motorscout positions. See id. Officer Minnifield's claim therefore reduces to Sergeant Boackle declining to recommend him for lateral transfer to a position offering the same pay but more prestige.

**B**

We conclude that Sergeant Boackle was acting within his discretionary authority when he recommended candidates for the vacant K-9 position. See Lee,

10

284 F.3d at 1194.  When he made the recommendations, Sergeant Boackle was the supervising sergeant for the K-9 unit.  Recommending candidates for vacant positions is a typical function of any supervisor.  In addition, Sergeant Boackle testified that he regularly sent memos containing recommendations "up the chain of command" for consideration by those with ultimate hiring authority.  I Aplt. App. 236.  Recommending candidates for assignment therefore fell well within the "outer perimeter" of Sergeant Boackle's duties.  See Harbert, 157 F.3d at 1282.

Officer Minnifield argues that Sergeant Boackle did not follow BPD rules when making his recommendation, placing his actions outside the scope of his discretionary authority.  The parties disagree about whether Sergeant Boackle applied the correct set of rules in selecting candidates for recommendation.  Officer Minnifield argues that Sergeant Boackle should have followed the Tactical Unit's rules, which set more stringent requirements that only Officer Minnifield met.   On the other hand, Sergeant Boackle contends that the lower standards set by the K-9 Unit's rules were the appropriate measure.  Even if the Tactical Unit's rules should have applied, we do not believe it places Sergeant Boackle's actions outside the scope of his discretionary authority.  The fact that Sergeant Boackle may not have followed internal policy to the letter does not negate his authority entirely.  See Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988) (district attorney acted within his discretionary authority in filing probable cause affidavit though no such cause

11

existed). Minor deviations from authority do not place an official's otherwise authorized actions beyond the "outer perimeter" of his or her duties.

## C

Once it is shown that an official was acting within his discretionary authority, qualified immunity applies unless the conduct alleged violates "clearly established statutory or constitutional rights of which a reasonable person would have known." White, 580 U.S. at __, 137 S. Ct. at 551. A plaintiff must therefore establish that (1) the conduct violated a statutory or constitutional right, and (2) the right was clearly established in the law. Id. This case is easily resolved on the second element, so it is unnecessary to resolve the first. See Pearson, 555 U.S. at 236.

The district court assumed that Officer Minnifield asserted the right to be free from racial discrimination and retaliation in the workplace. However, this formulation was too broad. Defining the law at this "high level of generality" for qualified immunity purposes is discouraged by the Supreme Court. See Ashcroft, 563 U.S. at 742. The proper inquiry is whether it was clearly established law that failing to recommend an employee for a lateral transfer to a position (offering the same pay but more prestige) is an adverse employment action for purposes of disparate treatment and retaliation claims. This formulation "particularizes" the question to the circumstances and answers whether then-existing law put Sergeant

12

Boackle on "fair notice" that his actions violated Officer Minnifield's rights. White, 580 U.S. at __, 137 S. Ct. at 552; Brosseau, 543 U.S. at 198.

The law did not clearly establish that Sergeant Boackle's conduct constituted an adverse employment action, under either the disparate treatment or retaliation standard. Existing law does not place the question of whether a supervisor's refusal to recommend someone for a lateral transfer, like the one at issue here, is an adverse employment action "beyond debate." See White, 580 U.S. at __, 137 S. Ct. at 1152. Nor did the law "truly compel" the conclusion that it is. See Gonzalez, 161 F.3d at 1295. Officer Minnifield clearly wanted a K-9 position, pursued one tenaciously, and was unhappy that he was not successful. However, even after assuming disputed facts in his favor, we are left with only prestige as a material difference between the position he had and the position he sought. [2] Officer Minnifield has pointed us to no authority that clearly establishes that denial of a transfer to a job that is materially similar in all respects but prestige is an adverse employment action. Indeed, the cases relied upon by Officer Minnifield illustrate the point. See Hinson v. Clinch Cty., Georgia Bd. of Educ., 231 F.3d

---

[2] At oral argument, Officer Minnifield asserted that the adverse employment action is also grounded on the fact that the job duties of a patrol K-9 officer are "completely different" than those of a motorscout. But even the cases Officer Minnifield cites demonstrate that identifying a mere difference in job duties — even a complete one — is not enough to establish an adverse employment action. Some diminution of duties or responsibilities is shown in each of these authorities. If a mere difference in duties were enough, then even a promotion could be considered an adverse employment action.

13

821, 830 (11th Cir. 2000) (reasonable factfinder could conclude that transferred employee "suffered a loss of prestige and responsibility") (emphasis added); Collins v. Illinois, 830 F.2d 692, 704 (7th Cir. 1987) (adverse action where employee was transferred to new department in a position with fewer responsibilities, deprived of a telephone, delisted from professional publications, and assigned to a desk in a receptionist's area instead of a private office); de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs., 82 F.3d 16, 21 (2d Cir. 1996) (adverse action where employee was transferred "to a less prestigious unit with little opportunity for professional growth") (emphasis added); Torre v. Casio, Inc., 42 F.3d 825, 831 n.7 (3d Cir. 1994) (adverse action could be established if employee transferred to "dead-end job").  The law hardly points so clearly in favor of Officer Minnifield's position that Sergeant Boackle had "fair notice" that he was violating the law by declining to recommend him for transfer.  Brosseau, 543 U.S. at 198.

The district court concluded that Officer Minnifield had shown an adverse employment action by a "failure to promote" and the denial "of employment opportunities."  Minnifield, 325 F.R.D. at 464.  Officer Minnifield argues that Sergeant Boackle's refusal to recommend him for a patrol K-9 position was an

14

adverse employment action because it prevented him from gaining the experience that was a prerequisite to apply for an airport K-9 position. We disagree.

The connection here is too attenuated and speculative to support the argument. Even if that were not the case, the argument would still fail because the patrol and airport K-9 positions were similar in all material respects. The fact that one was a prerequisite to apply for the other does not remedy the lack of materially improved conditions or duties. This case does not involve a failure to promote — that is the heart of the issue before us. The patrol K-9 position was a lateral transfer. Officer Minnifield cannot argue that he suffered an adverse employment action because Sergeant Boackle's refusal to recommend him for a lateral transfer foreclosed his opportunity to apply for yet another lateral transfer.

Officer Minnifield's foreclosed opportunity argument rests on the assumption that, even if the patrol K-9 position did not get a 5% increase in pay, the airport K-9 position did. But we have already assumed that the patrol K-9 position received this same increase in pay, and concluded that Sergeant Boackle is entitled to qualified immunity for failure to recommend under those facts. We are left, again, with prestige and different — but not materially diminished — job duties as grounds for finding an adverse employment action. See supra, n.2. The

15

law did not clearly establish that these facts constitute an adverse employment action.

## IV

Sergeant Boackle was acting within his discretionary authority by recommending, and declining to recommend, candidates for the patrol K-9 position.  Officer Minnifield has failed to carry his burden of showing that Sergeant Boackle violated a clearly established right by declining to recommend him for transfer.  Sergeant Boackle is entitled to qualified immunity.

We **REVERSE** the denial of qualified immunity and **REMAND** this case to the district court for further proceedings consistent with this opinion.

16